Alan Burton Newman, Esq. (40403)
ALAN BURTON NEWMAN, A PROFESSIONAL LAW CORPORATION
4344 Promenade Way, Suite 104
Marina Del Rey, California 90292-6281
Telephone: (310) 306-4339 Facsimile: (310) 821-1883

Attorney for Plaintiffs,
HALEY VIDECKIS and
LAYANA WHITE

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| HALEY VIDECKIS and LAYANA WHITE, individuals,<br><br>Plaintiffs,<br><br>vs.<br><br>PEPPERDINE UNIVERSITY, a corporation doing business in California,<br><br>Defendants.<br><br><br>DEMAND FOR JURY TRIAL | Case No.: 2:15-CV-00298<br><br>**FIRST AMENDED COMPLAINT FOR DAMAGES**<br><br>**1ST CAUSE OF ACTION: BROUGHT BY PLAINTIFFS, AGAINST DEFENDANT PEPPERDINE UNIVERSITY VIOLATION OF RIGHT OF PRIVACY UNDER CALIFORNIA CONSTITUTION, ARTICLE 1, §1**<br><br>**2ND CAUSE OF ACTION: BROUGHT BY PLAINTIFFS AGAINST DEFENDANT PEPPERDINE UNIVERSITY, VIOLATION OF CALIFORNIA EDUCATIONAL CODE §220, 66251, 66270**<br><br>**3RD CAUSE OF ACTION: BROUGHT BY PLAINTIFFS AGAINST DEFENDANT PEPPERDINE UNIVERSITY VIOLATION OF TITLE IX**<br><br>Trial Date: None<br><br>Judge: Hon. Dean D. Pregerson |

## I.   PARTIES

1.      Plaintiff HALEY VIDECKIS, ("Haley"), is a resident of California and a 20-year-old, Caucasian woman, playing basketball at Pepperdine University. She is a transfer student from Arizona State University. She was one of the outstanding players at Arizona State University and earned PAC 12 All-Freshman honorable mention notice during the 2012-2013 season. In July 2013, she was highly recruited by the University and its coaches and transferred

to Pepperdine University to seek better education and further her career to become a WNBA basketball player.

2.      Plaintiff LAYANA WHITE, ("Layana"), is a resident of California and a 21-year-old, African American woman, playing basketball at Pepperdine University. She is a transfer student from University of Arizona where she played basketball as one of its top players. She was highly recruited by the University and its coaches and transferred to Pepperdine University in January 2014. She believed that transferring to Pepperdine University would provide her better education and further her career to become a WNBA player.

3.      Defendant PEPPERDINE UNIVERSITY, ("University"), is a university located in California and is believed to be a corporation. The University and its students receive funds from the federal government and the state of California.

## II.    NON PARTIES

4.      Plaintiffs incorporate by reference each and every allegation contained in paragraphs 1 through 4 as though set forth fully herein.

5.      RYAN WEISENBERG, ("Coach Ryan"), is the head coach of the women's basketball team at Pepperdine University and acted within the scope and course of his employment at all time mentioned herein. Coach Ryan is a managing agent of the University in regards to the decisions which of the students will be members of the basketball team, under what conditions they may play and their code of conduct. Coach Ryan directed, encouraged, approved, knew, and failed to correct and stop the alleged conduct of his assistant coaches, athletic trainers and academic coordinator which are part of Plaintiffs cause of actions against Defendant Pepperdine University.

6.      JORDAN, ("Coach Jordan"), is an assistant coach of the women's basketball team at Pepperdine University, reports to Coach Ryan and acted within the scope and course of her employment at all time mentioned herein.

7.      MALLORIE, ("Coach Mallorie"), is an assistant coach of the women's basketball team at Pepperdine University, reports to Coach Ryan and acted within the scope and course of her employment at all time mentioned herein.

8.      TRISHA, ("Coach Trisha"), is an assistant coach of the women's basketball team at Pepperdine University, reports to Coach Ryan and acted within the scope and course of her employment at all time mentioned herein.

9.      KEVIN, ("Kevin"), is the head athletic trainer of the women's basketball team at Pepperdine University, reports to Coach Ryan and acted within the scope and course of his employment at all time mentioned herein.

10.     KARISSA, ("Karissa"), is an assistant athletic trainer of the women's basketball team at Pepperdine University, reports to Coach Ryan and acted within the scope and course of her employment at all time mentioned herein.

11.     ADI, ("Adi"), is an athletic academic coordinator of the women's basketball team at Pepperdine University, works in junction with Coach Ryan and acted within the scope and course of her employment at all time mentioned herein.

12.     POTTS, ("Dr. Potts"), is the Athletic Director at Pepperdine University, a super visor of Coach Ryan and acted within the scope and course of his employment at all time mentioned herein. Dr. Potts is a managing agent of the University in regards to all athletic teams including women's basketball team, under what conditions they may play and their code of conduct.

13.     TABATHA, ("Title IX coordinator"), is a Title IX Deputy Coordinator at Pepperdine University and reports to President Benton and acted within the scope and course of her employment at all time mentioned herein. She is a managing agent of the University in regards to the University's compliance of Title IX.

14.     ANDREW BENTON, ("President Benton"), is the president and a managing agent at Pepperdine University at all time mentioned herein.

## III.   SUMMARY OF THE CASE

15.     Plaintiffs incorporate by reference each and every allegation contained in paragraphs 1 through 14 as though set forth fully herein.

16.     In the spring of 2014, Coach Ryan came to the conclusion that two of the players on his basketball team were lesbians and were having a lesbian relationship. The two basketball players were Plaintiffs, Haley and Layana. Coach Ryan believed that their lesbian relationship would cause turmoil within the team and a losing season. As a result, Coach Ryan deliberately invaded Plaintiffs' privacy, harassed Plaintiffs and discriminated against Plaintiffs based on their sexual orientation, in an effort to get them to quit. In this way, Plaintiffs' scholarships would be available for recruiting replacement players. In order to accomplish his goal, he was aided by his assistant coaches, trainers and academic coordinator.

17.     By September 2014, Coach Ryan was so successful in his endeavor that Layana attempted to commit suicide and Haley was medically disqualified by the trainers despite a doctor's diagnosis to the contrary. Plaintiffs complained to the athletic director and to the Title IX coordinator as to the above. However, they were deliberately indifferent and refused to take actions to stop the intrusion, harassment and discrimination. Instead, the Title IX coordinator issued a cover up report. In December 2014, because of the university's deliberate indifference to the invasion of privacy, harassment and discrimination based on sexual orientation, Plaintiffs resigned from the University.

## IV.   FACTS

18.     Plaintiffs incorporate by reference each and every allegation contained in paragraphs 1 through 17 as though set forth fully herein.

19.     In the beginning of February, academic coordinator, Adi, who was selected by the University to help female basketball players maintain good grades, pulled Haley into her office to

FIRST AMENDED COMPLAINT FOR DAMAGES

talk. In this meeting, Adi asked Haley if there were any gay or bisexual players on the team. Haley said no. Although she was aware of multiple girls on the team that were gay and bisexual, she could not answer this question honestly because Pepperdine is extremely discriminatory against the LGBT (Lesbian, Gay, Bisexual and Transgender) community. Furthermore, Adi asked Haley if she was gay. Haley said no. The next week, Adi asked Haley to come into her office. The following dialogue occurred.

> Adi: "I noticed that you and Layana have become very close."

> Haley: "Yeah, Layana and I have become good friends."

> Adi: "How close?" " Like BFFs or more than that?"

> Haley: "We are just friends."

In the study hall room, Adi asked Haley what she was doing for spring break. Haley told her that she was going home to Chicago and that Layana was going to visit Arizona. Adi said, "You aren't going to take Layana home with you?" Haley said no. Adi said, "Aren't you going to miss her?" When Haley and Layana returned from Vegas where they spent their break, Adi continued asking both Haley and Layana about their trip. These questions include but are not limited to: What did you do? Where did you sleep? Did you share a bed? Layana told Adi that she did not go to Vegas with Haley. Adi then told Layana that she did not believe Layana and that she knew that Layana was with Haley. Neither Haley nor Layana admitted to Adi that they went to Vegas together.

20.    In March, every time Haley would see Adi, she asked Haley about Layana. Adi would ask, "How are you and Layana?" She would ask this question in a way suggesting Haley and Layana were in a relationship. Adi never asked Haley how any of her other teammates were doing. Adi would ask Haley if she was going places with Layana on the weekends and ask personal questions about what they did together. On March 18, 2014, Adi asked Haley if Layana bought her anything for her birthday. When Haley said no, Adi seemed surprised. She asked if Layana took Haley anywhere for her birthday. Haley said no. Adi suggested a restaurant that

Layana and Haley go together on a date. Haley told Adi that she wouldn't be going with Layana anywhere on a date. Haley asked Adi very politely to stop asking her about Layana.

March 18 was the first leadership meeting. After the 2013-2014 season, Coach Ryan had a new idea for the team. He chose 6 of his team's best "leaders" and began "Leadership Meetings" to discuss the team's "Core Covenants." The Leadership Council was made up of the best leaders on the basketball team: Krista, Bria, Ea, and Keitra as well as Plaintiffs. Every leadership meeting occurred with only Coach Ryan in his office. No other coaches were there. Coach Ryan would have them watch videos, write their ideas and opinions discussing how to make the team more "successful", and have group discussions. He would also discuss his beliefs on what the negatives and positives to their specific team were.

21.     Towards the end of the spring semester, Adi began asking Haley whom she would be living with in the summer. Adi always asked, "Are you going to be living with Layana?" There are four people in each dorm and two people in each room. Adi would ask "Is Layana going to be sleeping in the same room as you?" "Do you guys push your beds together?" "Do you sleep together?"

22.     During March and April, Adi was also asking Layana very similar questions. Adi would ask Layana these questions during every weekly academic meeting and every time she was in study hall. Layana told Adi that Haley was her best friend and, "No, we are not dating.".Adi asked Layana if she "hung out and did things with her other best friends the same way she does with Haley." Layana told her, "yes, because Haley is just my friend." Also, every meeting Layana had with Adi, she would always say, "So how are you and Haley doing?" Adi would ask this question in the tone as if Layana and Haley are dating. Layana told Adi these questions were inappropriate and to "please stop."

23.     On April 16 at 9 am, Coach Ryan had a leadership meeting in which he offended many of the girls on the leadership council. Coach Ryan spoke on the topic of "lesbianism." Coach Ryan specifically said the word "lesbianism" stating the following: "Lesbianism is not

tolerated on this team. It is the reason why teams lose." "Lesbianism is a big concern in women's basketball."

At the end of April, Layana reported to Coach Ryan (no other coaches present) that Adi was constantly attempting to retain personal information from her regarding her private life. Coach Ryan assured Layana that other teammates had also complained about Adi not focusing on academics and he would soon be having a coach monitor the meetings with Adi. Layana told Coach Ryan that these questions occurred not only in her academic meetings but when she was in study hall as well.

Haley had to report to Adi before she left Pepperdine to turn in her books from the spring semester. Adi and Haley were alone in the academic room, and that is when the questioning began. Adi asked if Haley and Layana were going on a trip before break. Haley admitted that they were going together to Vegas.

24.     In May, Adi continued to ask Layana about Haley. Layana told Adi that her constant questions about Haley were irritating her, and she asked Adi why she always questioned her about Haley's friendship. Layana recalls Adi responding in a sarcastic way saying, "Because you and Haley are BFFs." Adi then questioned Layana saying "Right? You guys are just bffs, right? Or, are you closer than that?" Layana still told Adi that "Haley and I are just friends" and to "please stop asking these questions."

The day after Adi's birthday, Adi was telling Layana how she celebrated the night. Adi told Layana she went to a nice restaurant and then said sarcastically "You should take Haley there sometime for a date, that would be cute." Before Haley came back to school from May break, Adi would ask Layana in study hall "Are you excited for Haley to come back?" "Are you picking her up from the airport?" "Will you guys be staying in the same dorm room for the summer?"

At the end of May, Keitra, one of the teammates, warned Layana due to a meeting she just had with Coach Ryan. Keitra confided the content of the meeting to Layana. Coach Ryan asked

Keitra the following questions with no other coaches present. "Are you dating Sahara?" "Are Haley and Layana dating?" Sahara is a female student at Pepperdine, and by Coach Ryan asking if Keitra is dating Sahara, he was implying she was lesbian. Keitra denied these questions and asked Coach Ryan where he heard these rumors. Coach Ryan said he heard it from a staff member that the players were with everyday. Keitra told Layana to watch what she says around the staff members. Keitra told Layana that she thought the "staff member" was Adi or Karissa, the athletic trainer. When Haley returned to the University, she confirmed with Keitra, that Coach Ryan asked her "Are Haley and Layana dating?" Keitra told him no. Keitra also confided to Haley that Adi had also asked Keitra if she was dating Sahara.

In May, Layana called a meeting with Coach Ryan to discuss beginning to file her appeal to NCAA. Transfer students are not allowed to play basketball for an entire year without the appeal. Coach Ryan told Layana that he would be "starting the process right away" and he would also "be in contact with Pepperdine's athletic director, Dr. Potts and the head of compliance, Brian Barrio to push the appeal through." Layana received no response from Coach Ryan about her appeal or progress towards filing the appeal. Layana, as all NCAA athletes, cannot submit their appeal on their own. The athlete requires assistance from the University's athletic department which includes their coach, athletic director, and compliance.

25.   On June 4, Coach Ryan called individual meetings regarding the training room and athletic trainer Karissa with the entire coaching staff were present. In Haley's meeting, Karissa falsely accused Haley of breaking many rules in the training room dating all the way back in April. Haley said the accusations were not true, but Coach Ryan cut Haley off and told her she was lying and that she was wrong. Haley then told the coaches that Karissa was very unprofessional. Coach Ryan asked her how, so Haley told them about how Karissa was asking Haley if she ever dated girls and that Karissa told her that coach Trisha was gay which made Haley feel uncomfortable. Coach Trisha laughed and said, "That is not true!" She proceeded to let Coach Ryan yell at Haley and accuse her of lying.

On June 12, Layana met with athletic director Dr. Potts. In the meeting with Dr. Potts,

FIRST AMENDED COMPLAINT FOR DAMAGES

Layana said, "I had a meeting with Coach Ryan in May about filing my appeal to play right away. But I have not seen any progress. I wanted to know what is going on with the process." Dr. Potts responded to Layana saying, "I had no idea about your appeal." Layana was very confused and she said, "I don't understand why Coach Ryan doesn't want to do my appeal. I feel like he doesn't want me to play right away. I don't understand why and I don't know who can help me if Coach Ryan doesn't want to file my appeal." Then Dr. Potts said, "I'll take care of it. Just send me your NCAA appeal letter." Although Layana sent information regarding her appeal to Dr. Potts through email after the meeting, Layana did not receive any follow up of her appeal to this day. The University announced news this summer that their men's basketball player A.J. Lapray had received NCAA approval from his appeal to play immediately after transferring from Oregon. Furthermore, Layana arrived to Pepperdine six months before A.J. arrived to Pepperdine, yet his appeal was filed and approved first.

Later in the month of June, Coach Ryan made another comment referring to intra-team dating. Coach Ryan made the following statement. "When I was coaching for the LA Sparks, two of our players were dating and they broke up in season. That was the reason our team fell apart and lost." Coach Ryan's comments about lesbians were becoming obsessive and very strange. Both Layana and Haley's coaches at their previous PAC 12 School would never have conversations about intra-team dating and never did they use the word lesbianism. Women's basketball is stereotyped for having many lesbians, and it is more expected than prevented. When, Haley and Layana heard Coach Ryan's statement that he was against the lesbian lifestyle within his team, it made them think Coach Ryan would pull their scholarships if he confirmed their relationship. At this point, Layana began to suffer from severe depression.

During June, the following events took place. Adi asked Layana, "So do you guys push your beds together in the dorm room? Do you guys sleep together?" Whenever Layana saw Adi on Fridays in study hall, she would ask her, "Are you taking your girl home with you this weekend?" referring to Haley. One Friday, she asked Layana what she was going to do over the weekend and she told Adi she was going to Disneyland. Adi then asked Layana, "Oh are you

FIRST AMENDED COMPLAINT FOR DAMAGES

taking Haley to Disneyland?" Layana said, "No, I'm taking my sister with me." Layana asked Adi why she wanted to know if she was going to take Haley. Adi replied sarcastically, "Because you guys are BFFs". These comments occurred when Layana was in study hall supervised by Adi.

When Layana achieved 3.0 GPA , the team rule required her to study in study hall for 2 hours instead of 5 hours per week. Because of Adi's questions into Layana's sexual orientation, she was looking forward to the reduction of study hall hours. However, Coach Ryan changed up to the requirement from 3.0 to 3.2 immediately after Layana reached a 3.0, notwithstanding, Coach Ryan knew Adi's continued questioning during study hall was upsetting to Layana. This increased requirement only applied to Layana since the other teammates had either below 3.0 or above 3.2.

When Layana and Haley were the only two practicing, Bria, one of Plaintiffs' teammates, came up to Haley and Layana and asked if they had a minute to talk. Bria said, "Hey guys. I just want to let you know, be careful what you tell Adi because she tells Coach Ryan everything." Bria would not say why she made this statement to only Haley and Layana, but she warned them to be very careful, as if Adi had told Coach Ryan something bad about Haley and Layana. After Bria left, Layana and Haley believed that Adi told Coach Ryan that they were dating. They did not say anything to Bria because they were keeping their relationship very secret. Haley and Layana agreed to make a more conscious effort to keep their relationship confidential. Haley and Layana were very afraid that if Coach Ryan found out they were dating, he would take away their scholarships, especially after the leadership meeting when he stated, "lesbianism is not tolerated here."

26.     In early July, Adi falsely accused Plaintiffs of academic cheating. The academic coordinator knowingly made the false charges in an effort to make Plaintiffs quit the basketball team or be disqualified them from the team. However, there was no evidence of cheating and the charges were dropped. On July 28, Coach Ryan sent a text message to Krista, Plaintiffs'

teammate, that he was disappointed that she wanted to live off-campus with Haley and Layana. Robie, another teammate, also told Haley and Layana that she was told by Coach Ryan not to live with Haley and Layana off-campus because they were bad influences. Robie warned Haley and Layana that Coach Ryan is defaming them and trying to turn their teammates against them. Robie said she was confused as to why he was doing this. Robie did not know that Haley and Layana were dating.

27.     On August 25, Pepperdine commenced the fall semester and it was the first day of school. Haley and her teammate Allie were practicing in the gym. Allie told Haley that Coach Jordan had asked her if Layana and Haley were dating. Later that same night, Haley asked Bria if Coach Ryan had asked her whether Layana and Haley were dating. Bria confirmed that it was true.

On August 26, Layana had a meeting with Coach Ryan and Coach Mallorie. In this meeting, she asked Coach Ryan if he had been asking several teammates if Haley and her were dating. He denied these allegations. Layana told Coach Ryan two players on the team said that he had asked them if she and Haley were dating. Layana also told him that Coach Jordan asked Allie if they were dating. Coach Ryan said "I know for a fact that that is not true. My staff doesn't gossip. And gossip is what gets people fired." Coach Ryan continued to deny that he asked any girls, and he claimed that the players were making up these rumors to start drama. Coach Ryan suggested that Layana call a team meeting and address this rumor. Layana said she did not think that was necessary when she could end the rumor in his office right then and there. Then Coach Ryan called Allie into this meeting to confirm her statement. Allie confirmed that Coach Jordan asked her. Coach Ryan then called Coach Jordan on speakerphone. Coach Jordan admitted that she asked Allie if Layana and Haley were dating. Coach Ryan asked Allie to leave and then kept asking Layana who were the other two girls who said he asked about Haley and Layana dating. Layana did not release any names. Layana told Coach Ryan that she promised her teammates she would not get them involved, and all she wanted to do was end the rumor. Coach Mallorie asked Layana why this situation bothers her so much. Layana answered, "Because I don't want that

reputation at this Christian school." Then, Coach Mallorie asked, "So what is really going on between you and Haley? Are you dating?" Layana told Coach Mallorie that they were not dating.

28.     On September 3, Layana went to the academic room with her teammates, Keitra, Kelsey and Whitney, to do their study hall but there were no more seats left. The players all signed in together and did their homework in the locker room. Adi went into the study hall room and saw that they all signed in but were not in the study hall room. Adi called Coach Ryan and told him that specifically Layana checked in for study hall but was not in the study hall room.

On September 5, Coach Ryan called a meeting with Coach Mallorie, Adi, and Layana. In the meeting, Coach Ryan justified Adi's accusations that Layana was not in the study hall room on September 3. Coach Ryan said he discussed it with Adi, and Layana would be receiving a punishment. Out of all of the players that were studying in the locker room, Layana was the only one to get punished by Coach Ryan and Adi for not being in the academic room for study hall. The other girls were not punished because Adi claimed that they all left her a note on her desk before going to the locker room. Layana was with the girls the entire time and she knew for fact that they all did not leave any notes.  The punishment was extra study hall hours the following week.

After the meeting, Layana was sitting outside the coaches' office with Haley finishing her homework. Adi walked up to Layana's desk with a book she needed for class. Instead of handing it to Layana, Adi slammed the book on the desk in front of her face. Layana packed up her backpack and told Haley that she needed to leave. That night Layana attempted to commit suicide.

On September 9, Haley told Coach Ryan that she would not be at practice on Friday September 12th because she is getting tested for cervical cancer.

On September 16, Haley met with Dr. Green at 2 pm. He told her that she was cleared for her condition. During the days leading up to this doctor's appointment, Haley was harassed by

Karissa to release all medical records as she claimed, "It is obvious you are hiding and lying about something." These comments were not true. Before Haley left the appointment, Dr. Green told her that he would need to run a mandatory urine test to check if she had a urine infection. Haley requested Dr. Green's notes from the visit to see exactly what she was tested for, but the Pepperdine Health Center did no provide her with any of Dr. Green's notes from her visit.

Within hours after leaving the health center, Haley received an email from Karissa stating, "You will not be cleared for participation until the documentation from the spine specialist has been brought to the athletic medicine center." As Haley had already left campus, she provided the documentation the following day to the training room.

On September 17, Haley called the health center and asked to speak with Dr. Green. The front desk would not release his contact information or the documentation from the visit. Instead, the front desk contacted Dr. Green on Haley's behalf with her question as to why she was not cleared. He responded via email to the front desk that he did clear Haley because he was unaware of her spine condition and Haley could not be cleared until she brought documentation to Karissa. That same day Haley brought her MRI, diagnosis, and treatment of prescription to the athletic training room. Within hours, she received back-to-back emails from Karissa and Kevin.

Karissa's email at 1:38 pm: "The documents that you have provided regarding your doctor's visit at the Southern California Orthopedic Institute do provide us with enough information. What we need is a diagnosis, treatment plan, and any treatment recommends that the physician has prescribed."

Kevin at 2:34 pm: "In order for medical clearance to be considered at Pepperdine you have been asked to provide the athletic training center details of a recent physician visit regarding your sacrum. Today you provided an MRI report to the athletic training center... Please get us the following information regarding your sacrum; All the physician notes on diagnosis and plan for treatment."

Haley called Coach Ryan and explained that her doctor's office already released all of the

documentation they have on file for her. She asked Coach Ryan if he can come with her to the training room to speak with Kevin and Karissa about her seeing the basketball team orthopedic if it is necessary, to be cleared for her tailbone injury. Coach Ryan told her that he would not help her. Then, Haley sent an email to Kevin and addressed Kevin's request to a diagnosis and treatment. "Regarding your concerns for the diagnosis not being in the documentation, please note page 3 of my paperwork. Located above the prescription note is "DX" (diagnosis): "Coccygeal" (tailbone) pain." Neither Kevin nor Karissa responded to Haley's email that the diagnosis was on page 3.

On September 18, Haley met with Karina who is an assistant for the athletic director Dr. Potts. She told Karina that she felt Coach Ryan did not want her on the team anymore. She explained that Coach Ryan had told her there was nothing he could do about it and that neither Dr. Potts nor President Benton could help her. Karina told Haley that Dr. Potts was not there, but he could meet with her at 9 a.m. the next morning.

On September 19, Haley met with Dr. Potts and Karina in his office. Dr. Potts was extremely rude in this meeting and he would not let her explain her side of the story. Within minutes, Haley was in tears by the way he was yelling at her for bringing this issue to his attention. Not only did Haley complain to Dr. Potts about not being cleared, Haley told him that Layana was also not cleared and hadn't been cleared to practice since May. Haley told Dr. Potts that it felt like the staff was trying to keep both Haley and Layana off the court and get them kicked out of the school. After class that day, Haley called Coach Ryan. On the phone, Haley said she needed to take the weekend to decide if she could be a part of the team. She said "I am very unhappy with the way I have been treated here." Coach Ryan did not ask her why, but he said he wanted a decision by Sunday morning at 8 am because he did not want to "drag it on." Haley told him that she needed until Monday to make a good decision.

On Monday, September 22, Haley called Coach Ryan and told him "I am not ready to make a decision today and I want to talk to you when you return from Florida on Thursday to give me enough time to think." Coach Ryan became very angry and said "No, I do not want to

drag this on. You will give me a decision by 5 pm." Haley told Coach Ryan, "You can say whatever you want but I will not sign papers that I voluntarily quit. If you want to kick me off the team just because I need more time to make a decision, that's your choice." Coach Ryan refused and told Haley to give him a decision by 5 pm. He said he would send an email to Dr. Potts saying that Haley would voluntarily quit if she did not give Coach Ryan a decision by that time.

On September 24, Haley sent Dr. Potts the following email. "I would like to inform you of my last communication with Coach Ryan over text. On Monday, September 22, I stated to him that "I have not made a decision to quit. I would like to discuss the situation when you come back from Florida. I have not voluntarily quit nor did I ever agree to Coach Ryan's deadline."

Dr. Potts replied to Haley on the same day, "I understand that you have expressed concerns regarding your participation as a student-athlete here and that an investigation into those concerns has begun." "Until then, as you requested, you are relieved from all activities related to our women's basketball team."

On November 7, Haley received the following letter from the Title IX investigator Tabatha. "I have conducted a thorough investigation of your claims and have attached a letter, which represents the conclusion to the investigation." "After thoroughly investigating the allegations, I have found that there is insufficient evidence to conclude that harassment or sexual orientation discrimination occurred." "According to the team doctor, Dr. Gary Green has not received this documentation to medically assess your fitness to play."

29.    On December 1, Haley sent to the University the following note from her doctor. "Based on her previous MRI findings, the patient's diagnosis and treatment plan remain unchanged. It is acceptable for the patient to return to basketball without restriction. No more notes/treatment are necessary at this time." Notwithstanding neither Haley nor Layana have been cleared to play basketball.

FIRST AMENDED COMPLAINT FOR DAMAGES

**V.    1ST CAUSE OF ACTION: BROUGHT BY PLAINTIFFS AGAINST ALL DEFENDANTS, VIOLATION OF RIGHT OF PRIVACY UNDER CALIFORNIA CONSTITUTION, ARTICLE 1, §1**

30.    Plaintiffs incorporate by reference each and every allegation contained in paragraphs 1 through 29 as though set forth fully herein.

31.    Plaintiffs had a reasonable expectation of privacy as to their sexual orientation while attending Pepperdine University and from intrusion into their privacy by Defendant Pepperdine University, Coach Ryan, his assistant basketball coaches, trainers and academic coordinator.

32.    Defendant Pepperdine University, Coach Ryan, his assistant coaches, trainers and academic coordinator intentionally intruded on Plaintiff's right of privacy at the University by asking questions relating to or to determine Plaintiffs' sexual orientation and demanded that Plaintiffs provide unlimited access to Plaintiffs' gynecology medical records.

33.    Plaintiffs were harmed, including but not limited to, emotional distress, which in the case of Layana, caused her to attempt suicide, to leave the University and to give up her basketball scholarship, and in the case of Haley, to give up basketball, to leave the University and to give up her scholarship. Defendants' intrusion into Plaintiffs' right of privacy were substantial factors in causing Plaintiffs' aforesaid harm.

34.    Coach Ryan is responsible for his own conduct and for that of his assistant coaches, trainers and academic coordinator who were under his control and direction. He had actual knowledge of the conduct and was deliberately indifferent to it. He refused to stop it or prevent it, and instead encouraged it.

35.    The athletic director had the actual knowledge of Coach Ryan's conduct and conduct of the assistant coaches, trainers and academic coordinator and was deliberately indifferent to it.

36.     The Title IX coordinator had the actual knowledge of the conduct, was deliberately indifferent to it, and issued a cover up report, rather than stop the conduct.

37.     Defendant Pepperdine University ratified the conduct once it had knowledge of the conduct and refused to prevent it from continuing. Coach Ryan was responsible for the invasion to privacy and was a managing agent of the University.

38.     Defendants intentional intrusion in to Plaintiffs' privacy was malicious and oppressive. Therefore, Plaintiffs are entitled to punitive damages.

**VI.     2ND CAUSE OF ACTION: BROUGHT BY PLAINTIFFS AGAINST DEFENDANT PEPPERDINE UNIVERSITY, VIOLATION OF CALIFORNIA EDUCATIONAL CODE §220, 66251, 66270**

**Disparate Treatment - Discrimination**

39.     Plaintiffs incorporate by reference each and every allegation contained in paragraphs 1 through 38 as though set forth fully herein.

40.     Coach Ryan intentionally discriminated against Plaintiffs because he believed that they were lesbians having a relationship.

41.     Plaintiffs received disparate treatment as they were treated differently than the other students in the University including but not limited to the following. Other students were not subject to pervasive questioning about their sexual orientation. Other players were not required to submit their gynecology medical records. Other players, unlike Haley and Layana, were not punished unfairly for minor violations and/or given lesser punishments. Other injured players, unlike Layana, were allowed to attend basketball practice. Appeals to the NCAA so that the basketball players could play immediately were routinely and immediately processed for other players but Layana's appeal was never processed.  Other players only had to provide minimal information to the trainers about non-basketball injury. Haley was required to provide extensive medical documents including doctor's notes. Other players had the support of the

coach in getting medical clearance from the trainers. Haley had no support from her coach.

42.     Coach Ryan is responsible for the discrimination of his assistant coaches, trainers and academic coordinator because he directed and encouraged the discrimination. He had actual knowledge of the discrimination and was deliberately indifferent to it.

43.     The athletic director had actual knowledge of the discrimination and was deliberately indifferent to it.

44.     The Title IX coordinator had actual knowledge of the discrimination and was deliberately indifferent to it.

45.     Defendant Pepperdine University had actual knowledge of the discrimination and was deliberately indifferent to it.

46.      Defendant's motive in the discrimination was to get Plaintiffs off the basketball team because they were lesbians who were in a relationship. This discrimination was a substantial factor in causing Plaintiffs' harm.

47.     Plaintiffs' harm included among other things the following. Layana suffered extreme emotional distress which resulted in the her attempted suicide. She was forced to give up playing basketball, lose her scholarship and leave the University. Haley suffered extreme emotional distress, the wrongful disqualification of playing basketball for the team, the loss of her scholarship, and leaving the University.

48.     Defendant Pepperdine University ratified the discrimination once it had knowledge of the conduct and refused to prevent it from continuing.  Coach Ryan was responsible for the discrimination and was a managing agent of the University. The discrimination was malicious and oppressive. Therefore, Plaintiffs are entitled to punitive damages.

**Harassment**

49.     Coach Ryan intentionally, severely, and pervasively harassed Plaintiffs because they were lesbians who were having a relationship on the team by including but not limited to the following. He continually asked questions about their sexual orientation. He encouraged his assistant coaches, trainers and academic coordinator to ask questions about Plaintiffs' sexual orientation. He punished Plaintiffs unfairly for minor violations. The trainers demanded Plaintiffs furnish their complete current and future gynecologist medical report for no legitimate reason. He refused to allow Layana to attend basketball practice because of her injury. He refused to process Layana's appeal to the NCAA so that she can play immediately. He refused to allow Haley to play basketball on the basis that she had not provided sufficient medical information on her non-basketball injury. He refused to help Haley to get medical clearance form the trainers.

50.     The harassing conduct was so severe, and pervasive that a reasonable person in Plaintiffs' circumstances would have considered the University's environment to be hostile and abusive. Plaintiffs considered the University's environment to be hostile and abusive.

51.     Coach Ryan is responsible for the harassment of his assistant coaches, trainers and academic coordinator because he directed and encouraged the harassment. He had actual knowledge of the harassment and was deliberately indifferent to it.

52.     The athletic director had the actual knowledge of the harassment and was deliberately indifferent to it.

53.     The Title IX compliance officer had the actual knowledge of the harassment and was deliberately indifferent to it.

54.     Defendant Pepperdine University had the actual knowledge of the harassment and was deliberately indifferent to it.

55.     Defendant's motive in the discrimination was to get Plaintiffs off the basketball team because they were lesbians who were in a relationship. This harassment was a substantial factor in causing Plaintiffs' harm.

56.     Plaintiffs' harm included among other things the following. Layana suffered extreme emotional distress which resulted in the her attempted suicide. She was forced to give up playing basketball, lose her scholarship and leave the University. Haley suffered extreme emotional distress, the disqualification of playing basketball for the team, the loss of her scholarship, and leaving the University .

57.     Defendant Pepperdine University ratified the harassment once it had knowledge of the conduct and refused to prevent it from continuing. Coach Ryan was responsible for the harassment and was a managing agent of the University. The harassment was malicious and oppressive. Therefore, Plaintiffs are entitled to punitive damages.

**Retaliation**

58.     Plaintiffs complained to the athletic director that Coach Ryan, his assistant coaches, trainers and academic coordinator had harassed and discriminated against them because Coach Ryan believed that Plaintiffs were lesbians who were in a relationship on the team.

59.     Plaintiffs' reporting of Coach Ryan's conduct and that of his assistant coaches, trainers and academic coordinator to the athletic director was a motivating factor in Coach Ryan continuing to harass and discriminate them.

60.     Coach Ryan is responsible for the retaliatory conduct of his assistant coaches, trainers and academic coordinator because he directed and encouraged their retaliatory conduct. He had actual knowledge of the retaliatory conduct and was deliberately indifferent to it.

61.     The athletic director had the actual knowledge of the retaliatory conduct and was deliberately indifferent to it.

62.     The Title IX coordinator had the actual knowledge of the retaliatory conduct and was deliberately indifferent to it.

63.     Defendant Pepperdine University had the actual knowledge of the retaliatory

FIRST AMENDED COMPLAINT FOR DAMAGES

conduct and was deliberately indifferent to it.

64.    The retaliatory conduct was a substantial factor in causing Plaintiffs' harm.

65.    Plaintiffs harm included among other things the following. Layana suffered extreme emotional distress which resulted in the her attempted suicide. She was forced to give up playing basketball, lose her scholarship and leave the University. Haley suffered extreme emotional distress, the disqualification of playing basketball for the team, the loss of her scholarship, and leaving the University.

66.    Defendant Pepperdine University ratified the retaliatory conduct once it had knowledge of the conduct and refused to prevent it from continuing. Coach Ryan was responsible for the retaliatory conduct and was a managing agent of the University. The retaliatory conduct was malicious and oppressive. Therefore, Plaintiffs are entitled to punitive damages.

**VII.    3RD CAUSE OF ACTION: BROUGHT BY PLAINTIFFS AGAINST DEFENDANT PEPPERDINE UNIVERSITY, VIOLATION OF TITLE IX**

**Disparate Treatment - Discrimination**

67.    Plaintiffs incorporate by reference each and every allegation contained in paragraphs 1 through 66 as though set forth fully herein.

68.    Coach Ryan intentionally discriminated against Plaintiffs because he believed that they were lesbians having a relationship.

69.    Plaintiffs received disparate treatment as they were treated differently than the other students in the University including but not limited to the following. Other students were not subject to pervasive questioning about their sexual orientation. Other players were not required to submit their gynecology medical records. Other players, unlike Haley and Layana, were not punished unfairly for minor violations and/or given lesser punishments. Other injured players, unlike Layana, were allowed to attend basketball practice. Appeals to the NCAA so that the basketball players could play immediately were routinely and immediately processed for

other players but Layana's appeal was never processed.  Other players only had to provide minimal information to the trainers about non-basketball injury. Haley was required to provide extensive medical documents including doctor's notes. Other players had the support of the coach in getting medical clearance from the trainers. Haley had no support from her coach.

70.    Coach Ryan is responsible for the discrimination of his assistant coaches, trainers and academic coordinator because he directed and encouraged the discrimination. He had actual knowledge of the discrimination and was deliberately indifferent to it.

71.    The athletic director had actual knowledge of the discrimination and was deliberately indifferent to it.

72.    The Title IX coordinator had actual knowledge of the discrimination and was deliberately indifferent to it.

73.    Defendant Pepperdine University had actual knowledge of the discrimination and was deliberately indifferent to it.

74.    Defendant's motive in the discrimination was to get Plaintiffs off the basketball team because they were lesbians who were in a relationship. This discrimination was a substantial factor in causing Plaintiffs' harm.

75.    Plaintiffs' harm included among other things the following. Layana suffered extreme emotional distress which resulted in the her attempted suicide. She was forced to give up playing basketball, lose her scholarship and leave the University. Haley suffered extreme emotional distress, the wrongful disqualification of playing basketball for the team, the loss of her scholarship, and leaving the University.

76.    Defendant Pepperdine University ratified the discrimination once it had knowledge of the conduct and refused to prevent it from continuing. Coach Ryan was responsible for the discrimination and was a managing agent of the University. The discrimination was

malicious and oppressive. Therefore, Plaintiffs are entitled to punitive damages.

**Harassment**

77.     Coach Ryan intentionally, severely, and pervasively harassed Plaintiffs because they were lesbians who were having a relationship on the team by including but not limited to the following. He continually asked questions about their sexual orientation. He encouraged his assistant coaches, trainers and academic coordinator to ask questions about Plaintiffs' sexual orientation. He punished Plaintiffs unfairly for minor violations. The trainers demanded Plaintiffs furnish their complete current and future gynecologist medical report for no legitimate reason. He refused to allow Layana to attend basketball practice because of her injury. He refused to process Layana's appeal to the NCAA so that she can play immediately. He refused to allow Haley to play basketball on the basis that she had not provided sufficient medical information on her non-basketball injury. He refused to help Haley to get medical clearance form the trainers.

78.     The harassing conduct was so severe, and pervasive that a reasonable person in Plaintiffs' circumstances would have considered the University's environment to be hostile and abusive. Plaintiffs considered the University's environment to be hostile and abusive.

79.     Coach Ryan is responsible for the harassment of his assistant coaches, trainers and academic coordinator because he directed and encouraged the harassment. He had actual knowledge of the harassment and was deliberately indifferent to it.

80.     The athletic director had the actual knowledge of the harassment and was deliberately indifferent to it.

81.     The Title IX compliance officer had the actual knowledge of the harassment and was deliberately indifferent to it.

82.     Defendant Pepperdine University had the actual knowledge of the harassment and was deliberately indifferent to it.

83.     Defendant's motive in the discrimination was to get Plaintiffs off the basketball team because they were lesbians who were in a relationship. This harassment was a substantial factor in causing Plaintiffs' harm.

84.     Plaintiffs' harm included among other things the following. Layana suffered extreme emotional distress which resulted in the her attempted suicide. She was forced to  give up playing basketball, lose her scholarship and leave the University. Haley suffered extreme emotional distress, the disqualification of playing basketball for the team, the loss of her scholarship, and leaving the University .

85.     Defendant Pepperdine University ratified the harassment once it had knowledge of the conduct and refused to prevent it from continuing. Coach Ryan was responsible for the harassment and was a managing agent of the University. The harassment was malicious and oppressive. Therefore, Plaintiffs are entitled to punitive damages.

**Retaliation**

86.     Plaintiffs complained to the athletic director that Coach Ryan, his assistant coaches, trainers and academic coordinator had harassed and discriminated against them because Coach Ryan believed that Plaintiffs were lesbians who were in a relationship on the team.

87.     Plaintiffs' reporting of Coach Ryan's conduct and that of his assistant coaches, trainers and academic coordinator to the athletic director was a motivating factor in Coach Ryan continuing to harass and discriminate them.

88.     Coach Ryan is responsible for the retaliatory conduct of his assistant coaches, trainers and academic coordinator because he directed and encouraged their retaliatory conduct. He had actual knowledge of the retaliatory conduct and was deliberately indifferent to it.

89.     The athletic director had the actual knowledge of the retaliatory conduct and was deliberately indifferent to it.

FIRST AMENDED COMPLAINT FOR DAMAGES

90.     The Title IX coordinator had the actual knowledge of the retaliatory conduct and was deliberately indifferent to it.

91.     Defendant Pepperdine University had the actual knowledge of the retaliatory conduct and was deliberately indifferent to it.

92.     The retaliatory conduct was a substantial factor in causing Plaintiffs' harm.

93.     Plaintiffs harm included among other things the following. Layana suffered extreme emotional distress which resulted in the her attempted suicide. She was forced to  give up playing basketball, lose her scholarship and leave the University. Haley suffered extreme emotional distress, the disqualification of playing basketball for the team, the loss of her scholarship, and leaving the University.

94.     Defendant Pepperdine University ratified the retaliatory conduct once it had knowledge of the conduct and refused to prevent it from continuing. Coach Ryan was responsible for the retaliatory conduct and was a managing agent of the University. The retaliatory conduct was malicious and oppressive. Therefore, Plaintiffs are entitled to punitive damages.

## **RELIEF REQUESTED**

WHEREFORE, Plaintiffs pray for judgment against all Defendants as follows:

     a.     For compensatory damages;

     b.     For emotional distress;

     c.     For punitive damages;

     d.     For prejudgment and post judgment interest;

     e.     For costs of suit;

     f.     For attorney's fees; and for

     g.     Such other and further relief as this court may deem proper and just.

PLAINTIFFS DEMAND A JURY TRIAL.

1    DATED: February 5, 2014                    ALAN BURTON NEWMAN, PLC

2

3                                               By: _____

4                                                   Alan Burton Newman, Esq.
                                                    Attorney for Plaintiffs,
5                                                   HALEY VIDECKIS and
                                                    LAYANA WHITE
6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

FIRST AMENDED COMPLAINT FOR DAMAGES