O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

HALEY VIDECKIS AND LAYANA WHITE,

                    Plaintiffs,

        v.

PERPPERDINE UNIVERSITY, a corporation doing business in California,

                    Defendant.

_____

Case No. CV 15-00298 DDP (JCx)

**ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS**

[Dkt. No. 13]

    Presently before the Court is Defendant Pepperdine University ("Pepperdine")'s Motion to Dismiss the First Amended Complaint pursuant to Fed. R. Civ. P. 12(b)(6) (the "Motion"). (Dkt. No. 13.) Having considered the parties' submissions and heard oral argument, the Court GRANTS in part and DENIES in part the Motion and adopts the following order.

**I.   BACKGROUND**

    Plaintiffs in this case are Haley Videckis ("Videckis") and Layana White ("White"). Videckis is a former member of Pepperdine's women's basketball team who transferred to Pepperdine

from Arizona State University in July 2013. (First Amended Complaint ("FAC"), Dkt. No. 22, ¶¶ 1, 47.) White is also a former member of Pepperdine's women's basketball team who transferred to Pepperdine from Arizona State University in January 2014. (FAC ¶¶ 2, 47.) Defendant Pepperdine is a university located in California. (Id. ¶ 3.) Pepperdine receives funds from the federal government and from the state of California. (Id.) Ryan Weisenberg ("Coach Ryan") is the head coach of the Pepperdine women's basketball team. (Id. ¶ 5.) Adi (whose full name was not provided in the FAC) is an athletic academic coordinator of the Pepperdine women's basketball team. (Id. ¶ 11.)

Plaintiffs' suit arises out of allegedly intrusive and discriminatory actions that Pepperdine and its employees committed against Plaintiffs on account of Plaintiffs' dating relationship. Plaintiffs allege that, in the spring of 2014, Coach Ryan and others on the staff of the women's basketball team came to the conclusion that Plaintiffs were lesbians and were in a lesbian relationship. (Id. ¶ 16.) Plaintiffs further allege that Coach Ryan and the coaching staff were concerned about the possibility of the relationship causing turmoil within the team. (Id.) Plaintiffs allege that, due to their concerns, Coach Ryan and members of the coaching staff harassed and discriminated against Plaintiffs in an effort to force Plaintiffs to quit the team. (Id.)

Plaintiffs allege that, beginning in February 2014, Adi would hold individual meetings with each of the Plaintiffs in order to determine Plaintiffs' sexual orientation and their relationship status. (Id. ¶¶ 19-22.) The questions consisted of asking, among

1    other things, how close Plaintiffs were, whether they took
2    vacations together, where they slept, whether they pushed their
3    beds together, whether they went on dates, and whether they would
4    live together.  (Id.)  The questioning lasted at least through June
5    2014.  (Id. ¶ 25.)  At the end of April, White reported to Coach
6    Ryan that Adi constantly was trying to retain information about
7    White's personal life instead of focusing on White's academics.
8    (Id. ¶ 23.)  Coach Ryan assured White that he would soon have a
9    coach monitor the players' meetings with Adi.  (Id.)

10        On April 16, 2014, Coach Ryan held a team leadership meeting
11   where he spoke on the topic of lesbianism.  (Id. ¶ 23.)  In the
12   meeting, Coach Ryan stated that lesbianism was a big concern for
13   him and for women's basketball, that it was a reason why teams
14   lose, and that it would not be tolerated on the team.  (Id.)

15        In May 2014, White met with Coach Ryan to discuss filing an
16   appeal to the NCAA that would allow her to play basketball in her
17   first year as a transfer student.  (Id. ¶ 24.)  Coach Ryan assured
18   White that he would be starting the process right away.  (Id.)
19   Afterwards, however, White received no updates on the progress of
20   the appeal.  (Id.)  Later, when White met with the athletic
21   director at Pepperdine, she alleges that the director had not been
22   informed of any appeal on her behalf.  (Id. ¶ 25.)

23        On June 4, 2014, Videckis complained to the coaching staff
24   that an athletic trainer had been asking Videckis inappropriate
25   questions about dating women.  (Id.)  Videckis alleges that Coach
26   Ryan accused her of lying when she complained about the
27   inappropriate questions.  (Id.)

28

1     Plaintiffs further allege that, in early July, Adi falsely
2  accused Plaintiffs of academic cheating. (Id. ¶ 26.)  The charges
3  were later dropped.  (Id.)  Later in July, Coach Ryan reached out
4  to two of Plaintiffs' teammates, recommended that the teammates not
5  live with Plaintiffs, and stated that Plaintiffs were bad
6  influences.  (Id.)

7     On August 25, 2014, Coach Ryan and another member of the
8  coaching staff asked two of Plaintiffs' teammates whether
9  Plaintiffs were dating.  (Id. ¶ 27.)  When Plaintiffs found out
10 that the coaches had been asking their teammates about Plaintiffs'
11 relationship status, White confronted Coach Ryan about the
12 questioning.  (Id.)  During this meeting, White was able to confirm
13 that the coaching staff had been asking teammates whether
14 Plaintiffs were dating.  (Id.)

15     In early September 2014, Adi and the coaching staff accused
16 White of being absent from a required study hall and punished
17 White.  (Id. ¶ 28.)  After the meeting where Coach Ryan and Adi
18 issued White's punishment, Adi walked up to White with a book white
19 needed and slammed the book on the desk in front of White.  (Id.)
20 That night, White attempted to commit suicide.  (Id.)

21     On September 9, 2014, Videckis informed Coach Ryan that she
22 would miss practice on September 12 because she was getting tested
23 for cervical cancer.  (Id.)  On September 16, 2014, Videckis met
24 with Dr. Green at the Pepperdine Health Center, who told her that
25 she was cleared for her condition.  (Id.)  After leaving her
26 appointment that day, Videckis received an email from an assistant
27 trainer on the team that stated Videckis would not be cleared for
28 participation unless Videckis provided the athletic medicine center

4

with documentation from a spine specialist.  (<u>Id.</u>)  On September
17, Videckis called the health center to request documentation.
(<u>Id.</u>)  That same day, Videckis brought her "MRI, diagnosis, and
treatment of prescription" to the athletic training room.  (<u>Id.</u>)
Afterwards, Videckis received emails from the athletic trainers
informing her that the documentation she provided was insufficient,
and that she needed to provide them with a diagnosis and treatment
plan.  (<u>Id.</u>)  Videckis spoke with Coach Ryan, telling him that she
had given the trainers all of the documentation the doctor's office
had on file for her.  (<u>Id.</u>)  Videckis requested Coach Ryan's
assistance in speaking with the trainers to clear her for her
tailbone injury, but Coach Ryan informed Videckis that he would not
help her.  (<u>Id.</u>)  Videckis replied to the emails, informing the
trainers that her diagnosis was in the documentation she had
provided, but received no response.  (<u>Id.</u>)

     On September 19, 2014, Videckis met with Dr. Potts, the
Pepperdine athletic director, and told him of her concerns
regarding unfair treatment by the women's basketball staff.  (<u>Id.</u>)
Videckis told Dr. Potts that she felt that the coaching staff was
trying to keep her and White from playing, and furthermore that
they were trying to get Plaintiffs kicked out of the school.  (<u>Id.</u>)
Videckis alleges that Dr. Potts was very rude during the meeting
and also that he yelled at her for bringing the issue to his
attention.  (<u>Id.</u>)

     That same day, Videckis called Coach Ryan and told him that
she was very unhappy with the way she had been treated.  (<u>Id.</u>)
Coach Ryan then told her that she would need to make a decision as
to whether she wanted to remain on the team by Sunday.  (<u>Id.</u>)

Videckis told him that she would need until Monday.  (Id.)  On

Monday, Videckis called Coach Ryan and told him that she needed

more time.  (Id.)  In response, Coach Ryan told her that he needed

her decision by 5pm that day; otherwise, he would tell Dr. Potts

that Videckis had quit voluntarily.  (Id.)

Videckis sent Dr. Potts an email on September 24, stating that

she had not made a decision to quit, and that she would like to

speak with Dr. Potts later that week when she was back in town.

(Id.)  Dr. Potts replied, saying that due to Videckis' concerns,

the school had begun an investigation, and that until then, as

requested, Videckis would be relieved from activities having to do

with the basketball team.  (Id.)

On November 7, 2014, Videckis received a letter from the Title

IX coordinator.  (Id.)  The letter stated that there was

insufficient evidence to conclude that harassment or sexual

orientation discrimination had occurred, and further that according

to the team doctor, Dr. Green "has not received this documentation

to medically assess your fitness to play."  (Id.)  On December 1,

2014, Videckis sent the university a doctor's note stating that

"[i]t is acceptable for [Videckis] to return to basketball without

restriction."  (Id. ¶ 29.)

As of the filing of the FAC, neither Videckis nor White had

been cleared to play basketball.  (Id.)

Plaintiffs' FAC alleges three causes of action: (1) violation

of the right of privacy under the California constitution; (2)

violation of California Educational Code §§ 220, 66251, and 66270;

and (3) violation of Title IX.  Pepperdine moves to dismiss on all

claims.

## II.   LEGAL STANDARD

A 12(b)(6) motion to dismiss requires the court to determine the sufficiency of the plaintiff's complaint and whether or not it contains a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).  Under Rule 12(b)(6), a court must (1) construe the complaint in the light most favorable to the plaintiff, and (2) accept all well-pleaded factual allegations as true, as well as all reasonable inferences to be drawn from them.  See Sprewell v. Golden State Warriors, 266 F.3d 979, 988 (9th Cir. 2001), amended on denial of reh'g, 275 F.3d 1187 (9th Cir. 2001); Pareto v. F.D.I.C., 139 F.3d 696, 699 (9th Cir. 1998).

In order to survive a 12(b)(6) motion to dismiss, the complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556U.S. 662, 663 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  Iqbal, 556 U.S. at 678. Dismissal is proper if the complaint "lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." Mendiondo v. Centinela Hosp. Med. Ctr., 521 F.3d 1097, 1104 (9th Cir. 2008); see also Twombly, 550 U.S. at 561-63 (dismissal for failure to state a claim does not require the appearance, beyond a doubt, that the plaintiff can prove "no set of facts" in support of its claim that would entitle it to relief).  A complaint does not suffice "if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" Iqbal, 556 U.S. at 678 (quoting Twombly, 550

7

U.S. at 556).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.  The Court need not accept as true "legal conclusions merely because they are cast in the form of factual allegations."  Warren v. Fox Family Worldwide, Inc., 328 F.3d 1136, 1139 (9th Cir. 2003).

**III.   DISCUSSION**

    **A.  Plaintiffs' Right of Privacy Claim**

Pepperdine argues for dismissal of Plaintiffs' right of privacy claim because: (1) Plaintiffs had no reasonable expectation of privacy as to either their medical records or their sexual orientation; and (2) the alleged invasion of privacy was not sufficiently severe.  A plaintiff alleging a claim for invasion of privacy under the California constitution must establish three elements: (1) a legally protected privacy interest; (2) a reasonable expectation of privacy in the circumstances; and (3) conduct by defendant constituting a serious invasion of privacy. Hill v. Nat'l Collegiate Athletic Assn., 7 Cal. 4th 1, 39-40 (1994).  Pepperdine argues that Plaintiffs have failed to establish the second two elements in their FAC.  Pepperdine does not argue that Plaintiffs do not have a legally protected privacy interest with respect to their medical records or sexual orientation.

    **1.  Reasonable Expectation of Privacy as to Medical Records**

In Hill, the California Supreme Court held that the NCAA's drug testing policy for college athletes did not amount to a constitutional invasion of privacy because the athletes did not have a reasonable expectation of privacy given the circumstances.

1  <u>Hill</u>, 7 Cal. 4th at 41-42.  <u>Hill</u> held that the athletes did have a

2  legally protected privacy interest, but that it was diminished

3  given that: (1) they were willing participants in NCAA sports, and

4  (2) they knew that drug testing would be part of the requirements

5  for playing at the NCAA level.  <u>Id.</u>

6      Plaintiffs' alleged circumstances are different than those of

7  the athletes in <u>Hill</u>.  Although Plaintiffs, as they themselves

8  acknowledge, give up some expectation of privacy as to their

9  medical records due to their voluntary participation in college

10 basketball, the right to privacy in their records remains insofar

11 as those records are unrelated to their participation in athletics.

12 Plaintiffs allege that the medical records requests were not

13 related to the legitimate purpose of confirming Plaintiffs'

14 physical fitness to play; instead, they allege that the requests

15 were motivated by the desire to harass Plaintiffs in order to force

16 them to quit the basketball team.  <u>See Hill</u>, 7 Cal. 4th at 44

17 (stating that the plaintiffs did not "attribute bad faith motives

18 to the NCAA" in employing its drug testing policy).

19     Although it is possible Plaintiffs had a reasonable

20 expectation to privacy with respect to their medical records,

21 Plaintiffs have alleged insufficient facts in their FAC to support

22 a reasonable expectation of privacy given the circumstances.  The

23 FAC is confusing and seemingly contradictory in its description of

24 the circumstances surrounding the requests for Videckis' medical

25 records.  Although the FAC alleges that the coaching staff

26 "demanded that Plaintiffs provide unlimited access to Plaintiffs'

27 gynecology medical records," the FAC only alleges specific facts

28 regarding the training staff's demands for records of Videckis'

tailbone injury, not her gynecological records.  (<u>See</u> FAC ¶¶ 28,
32.)  Plaintiffs do state that Videckis had a doctor's appointment
for a cervical cancer screening; however, the appointment with Dr.
Green about which the training staff inquired appears to be an
appointment regarding Videckis' tailbone pain.  (<u>Id.</u> ¶ 28.)  A
tailbone injury would be relevant to Videckis' ability to play
basketball, and Videckis would not have a reasonable expectation of
privacy with respect to her tailbone injury.  On the other hand,
Videckis may have a reasonable expectation of privacy with respect
to her gynecological records.

> **2.   Reasonable Expectation of Privacy as to Sexual**
> **Orientation**

Pepperdine argues that Plaintiffs had no reasonable
expectation of privacy as to their sexual orientation.  Pepperdine
cites to <u>Barbee v. Household Automotive Finance Corp.</u> in support of
its contention that team coaches and supervisors had a valid reason
for questioning Plaintiffs' relationship - that of the concern for
a cohesive and supporting team dynamic.  <u>Barbee</u>, 113 Cal. App. 4th
525.  <u>Barbee</u> held that a sales manager had no reasonable
expectation of privacy as to the manager's intimate relationship
with a subordinate.  <u>Id.</u> at 532-33.

<u>Barbee</u> can be distinguished from the present case in multiple
ways.  First, <u>Barbee</u>'s holding was limited to the question of
whether  "customs, practices, and physical settings, weigh[ed]
heavily against finding a broadly based and widely accepted
community norm[] that supervisors have a privacy right to engage in
intimate relationships with their subordinates."  <u>Id.</u> at 533
(internal quotations omitted).  The present case involves a

relationship between fellow players on a basketball team, not between a supervisor and a subordinate, and further does not implicate an obvious potential conflict of interest.  Second, in Barbee there was an express company policy that supervisors who wished to pursue an intimate relationship with a subordinate bring the matter to the attention of management.  Id.  Here, Pepperdine cites to a statement made by Coach Ryan that relationships between teammates are problematic for team cohesiveness; this does not constitute anything near an express policy.  Third, the privacy right that was claimed in Barbee was one in "pursuing an intimate relationship."  Id. at 531.  Here, part of the privacy right alleged by Plaintiffs is to the fact of their sexual orientation as well as the right to be free from "questions relating to or to determine Plaintiffs' sexual orientation."  FAC ¶¶ 31-32.  Other California cases have held that there is a protectable right to be free from intrusive questioning related to one's sexual activities.  See, e.g., Roman Catholic Bishop v. Superior Court, 42 Cal. App. 4th 1556, 1567(1996) ("the employer who queries employees on sexual behavior is subject to claims for invasion of privacy and sexual harassment"); Botello v. Morgan Hill Unified Sch. Dist., No. C09-02121 HRL, 2009 WL 3918930, at *5 (N.D. Cal. Nov. 18, 2009) (holding that student had a reasonable expectation of privacy as to school administrators' questioning of the student's sexual orientation).

The Court finds that Plaintiffs had a reasonable expectation of privacy as to their sexual orientation and their intimate activities.

///

### 3.   Severity of the Invasion of Privacy

Pepperdine argues that the inquiries into Plaintiffs'
interpersonal relationships and the requests for medical records
fail to constitute a "serious invasion of privacy."  The California
Supreme Court has stated that "[a]ctionable invasions of privacy
must be sufficiently serious in their nature, scope, and actual or
potential impact to constitute an egregious breach of the social
norms underlying the privacy right." <u>Hill</u>, 7 Cal. 4th at 37.

Plaintiffs allege that Coach Ryan and other supervisors and
counselors for the basketball team essentially engaged in a
campaign of asking Plaintiffs about the details of their sexual and
personal lives for no legitimate reason other than to harrass
Plaintiffs.  These inquiries drove White to attempt suicide, and
drove both Plaintiffs to leave Pepperdine and give up their
basketball scholarships.  The Court declines to find at the motion
to dismiss stage that these types of actions do not constitute a
serious invasion of privacy.

### 4.  Conclusion

The Court will deny the motion to dismiss the invasion of
privacy claim as to Plaintiffs' sexual orientation.  However, since
the FAC only describes the circumstances surrounding the tailbone
injury records and not the gynecological records, Plaintiffs have
failed to state a claim for invasion of privacy insofar as the
medical records are concerned.  However, Plaintiffs may be able to
plead a claim as to the medical records requests if they are
allowed an opportunity to amend the FAC.  Accordingly, the Court
will grant the Motion without prejudice as to the portion of the
privacy claim concerning Plaintiffs' medical records.  <u>See Martinez</u>

1  v. Newport Beach, 125 F.3d 777, 785 (9th Cir. 1997) (leave to amend

2  should be granted unless amendment "would cause prejudice to the

3  opposing party, is sought in bad faith, is futile, or creates undue

4  delay").

5  **B.  Plaintiffs' Cause of Action under California Educational**

6  **Code §§ 220, 66251, and 66270**

7  Pepperdine seeks dismissal of Plaintiffs' California

8  Educational Code claim for failure to allege the necessary elements

9  as well as for being impermissibly vague.  Firstly, the Court does

10  not find that the allegations are impermissibly vague.  Plaintiffs

11  cite to the specific portions of the Educational Code under which

12  they are pursuing their action.  Although Section 66251 is a

13  general statement of policy, Sections 220 and 66270 have parallel

14  language that prohibits "discrimination on the basis of disability,

15  gender, gender identity, gender expression, nationality, race or

16  ethnicity, religion, sexual orientation" by educational

17  institutions that receive or benefit from state financial

18  assistance.  See Cal. Educ. Code §§ 220, 66270.  Section 220

19  applies to "educational institution[s]" in general while Section

20  66270 applies to "postsecondary educational institution[s]."  Cal.

21  Educ. Code § 220.  This puts Pepperdine fairly on notice of the

22  nature of the claims that Plaintiffs are asserting against the

23  school.

24  As to Pepperdine's argument that Plaintiffs fail to allege the

25  necessary elements of the cause of action under Section 220 and

26  Section 66270, the Court finds that Plaintiffs have sufficiently

27  pled those claims.  Plaintiffs' claims for sexual orientation

28  harassment under the California Educational Code are governed by

13

1  the same elements as a federal cause of action under Title IX.  See
2  Donovan v. Poway Unified Sch. Dist., 167 Cal. App. 4th 567, 603
3  (2008).   To prevail, a plaintiff must prove the following elements:
4  "(1) he or she suffered severe, pervasive and offensive harassment,
5  that effectively deprived plaintiff of the right of equal access to
6  educational benefits and opportunities; (2) the school district had
7  actual knowledge of that harassment; and (3) the school district
8  acted with deliberate indifference in the face of such knowledge."
9  Donovan, 167 Cal. App. 4th at 579 (internal quotations omitted).
10  The two primary elements that Pepperdine challenges are that
11  Plaintiffs have not shown "severe, pervasive and offensive"
12  harassment and that the school acted "with deliberate
13  indifference."   Plaintiffs have alleged that the questioning with
14  regards to their relationship was persistent and aggressive, and
15  that coaches and school officials failed to take concrete steps to
16  address the issues.   Pepperdine's arguments go to the ultimate
17  strength of Plaintiffs' allegations rather than whether they
18  support any plausible claim for harassment and deliberate
19  indifference at all.

20      **C. Plaintiffs' Title IX Cause of Action**

21      Pepperdine argues that Plaintiffs have failed to state a cause
22  of action under Title IX because Title IX only bans discrimination
23  based on gender, and not discrimination based on sexual
24  orientation.  See 20 U.S.C. § 1681(a) ("[n]o person in the United
25  States shall, on the basis of sex . . . be subjected to
26  discrimination under any education program or activity receiving
27  Federal financial assistance"); Hoffman v. Saginaw Public Schools,
28  No. 12-10354, 2012 WL 2450805, at *8 (E.D. Mich. June 27, 2012)

14

("while discrimination based on noncompliance with sexual stereotypes may be actionable under federal law, discrimination based on sexual orientation is not") (citing cases).

Plaintiffs acknowledge that their Title IX claim, as currently pled, alleges a Title IX violation due to discrimination on the basis of sexual orientation.  (Opp., Dkt. No. 6, at 6.)  Plaintiffs request leave to amend their Title IX claim because they argue they can state a claim of discrimination on the basis of "stereotyped gender roles," which would fall within the bounds of Title IX. (Id.)  In support of their position, Plaintiffs cite to a Northern District of Illinois case that they argue supports their position. See Howell v. N. Cent. Coll., 320 F. Supp. 2d 717, 722 (N.D. Ill. 2004).  The court in Howell stated that "[h]arassment that relies upon stereotypical notions about how men and women should appear and behave, according to the court, reasonably suggests that it can be attributed to sex."  Id. at 722 (internal quotations omitted). Pepperdine points out that in Howell, the Title IX claim was dismissed because the plaintiff, a player on a women's college basketball team, alleged she was discriminated against because of her views against homosexuality – something that the court in that case found alleged harassment based on sexual preference and not gender stereotyping.

As an initial matter, the Court notes that all of the cases referred to by the parties in support of the proposition that Title IX does not cover sexual orientation discrimination are out-of-circuit cases from the Seventh Circuit.  Recent case law from the Supreme Court and from the Ninth Circuit indicates that the bounds of Title IX may not be so narrow.  See, e.g., United States v.

1  <u>Windsor</u>, 133 S. Ct. 2675, 2696 (2013) (striking down the federal

2  Defense of Marriage Act because "no legitimate purpose overcomes

3  the purpose and effect to disparage and to injure those whom the

4  State, by its marriage laws, sought to protect in personhood and

5  dignity"); <u>SmithKline Beecham Corp. v. Abbott Labs.</u>, 740 F.3d 471,

6  483 (9th Cir. 2014) (interpreting <u>Windsor</u> to apply heightened

7  scrutiny to classifications based on sexual orientation

8  discrimination); <u>Latta v. Otter</u>, 771 F.3d 456, 479-495 (9th Cir.

9  2014) (reasoning that Idaho and Nevada's same-sex marriage

10  proscriptions are unconstitutional not only because they

11  discriminate on the basis of sexual orientation, but also because

12  they discriminate on the basis of <u>sex</u> since: (1) they facially

13  classify on the basis of gender, and (2) they are based in gender

14  stereotypes) (Berzon, J., concurring).  The law is rapidly

15  developing and far from settled insofar as determining where sexual

16  orientation discrimination lies within the framework of gender-

17  based discrimination.  Recent Ninth Circuit cases suggest that the

18  distinction between sexual orientation discrimination and sexual

19  discrimination is illusory.  Furthermore, discrimination based on a

20  same-sex relationship could fall under the umbrella of sexual

21  discrimination even if such discrimination were not based

22  explicitly on gender stereotypes.  For example, a policy that

23  female basketball players could only be in relationships with males

24  inherently would seem to discriminate on the basis of gender.  In

25  this example, the gender discrimination would be that the female

26  players would be prevented from entering into relationships with

27  other females because their chosen partner was female.  Even if a

28  similar same-sex ban were imposed on the men's basketball team, the

16

unequal classification would still hold, as women seeking to be in relationships with men would not be treated equally as men seeking to be in relationships with me.  For these reasons, the Court would be disinclined to give weight to older out-of-circuit cases that make a categorical distinction between gender-based discrimination and sexual orientation discrimination.

Because Plaintiffs have not contested Pepperdine's argument that Title IX does not cover sexual orientation discrimination, and because Plaintiffs contend that they can state a case based on gender discrimination, the Court will dismiss Plaintiffs' Title IX claim with leave to amend.  However, the Court notes that the line between discrimination based on gender stereotyping and discrimination based on sexual orientation is blurry, at best, and thus a claim that Plaintiffs were discriminated against on the basis of their relationship and their sexual orientation may fall within the bounds of Title IX.

The Court acknowledges Pepperdine's protest that Plaintiffs have already had multiple chances to amend their complaint due to multiple meet-and-confer discussions.  However, given that this is only the second iteration of their complaint Plaintiffs' have filed with the Court, Plaintiffs should be granted another opportunity to amend.

The Court further notes that Pepperdine has raised questions as to whether Plaintiffs have sufficiently pled the elements for a private right of action under Title IX.  An implied private right of action does exist under Title IX.  However, in order to have pled a cause of action under Title IX, a plaintiff must prove that the federal funding recipients were "deliberately indifferent to

1  sexual harassment, of which they have actual knowledge, that is so

2  severe, pervasive, and objectively offensive that it can be said to

3  deprive the victims of access to the educational opportunities or

4  benefits provided by the school." Davis Next Friend LaShonda D. v.

5  Monroe Cnty. Bd. of Educ., 526 U.S. 629, 650 (1999). Because

6  Plaintiffs do not oppose the motion to dismiss, because the Court

7  Plaintiffs leave to amend, it would ask that Plaintiffs ensure

8  their amended complaint fully addresses and satisfies the elements

9  required to bring a Title IX claim.

10  **IV. CONCLUSION**

11     For the foregoing reasons, the Court DISMISSES Plaintiffs'

12  invasion of privacy claim - insofar as it is based on the requests

13  for Plaintiffs' medical records - with LEAVE TO AMEND. The Court

14  further DISMISSES the Title IX claim with LEAVE TO AMEND. Any

15  amended complaint should be filed within 20 days of the date of

16  this order. Pepperdine's Motion is otherwise DENIED.

17

18

19  IT IS SO ORDERED.

20

21

22  Dated: April 16, 2015

23                                      DEAN D. PREGERSON
                                        United States District Judge

24

25

26

27

28

18