JEREMY J. GRAY (SBN 150075)
jgray@zuberlaw.com
JEFFREY J. ZUBER (SBN 220830)
jzuber@zuberlaw.com
ZUBER LAWLER & DEL DUCA LLP
777 S. Figueroa Street, 37th Floor
Los Angeles, California 90017   USA
Telephone: (213) 596-5620
Facsimile: (213) 596-5621

Attorneys for Plaintiffs
Haley Videckis and Layana White

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| HALEY VIDECKIS and LAYANA WHITE, individuals,<br><br>Plaintiffs,<br><br>v.<br><br>PEPPERDINE UNIVERSITY, a corporation doing business in California,<br><br>Defendant. | CASE NO. 2:15-CV-00298-DDP (JCx)<br><br>**OPPOSITION TO DEFENDANT PEPPERDINE UNIVERSITY'S MOTION TO DISMISS THIRD, FOURTH AND FIFTH CAUSES OF ACTION OF PLAINTIFFS' THIRD AMENDED COMPLAINT AND PRAYER FOR PREJUDGMENT INTEREST PURSUANT TO FED.R.CIV.P. 12(b)(6)**<br><br>Date: July 20, 2015<br>Time: 10:00 A.M.<br>Crtrm.: 3<br><br>Trial Date: None Set |

2079-1002 / 418549.1

# TABLE OF CONTENTS

Page

I. PRELIMINARY STATEMENT ........................................................................ 1
    A. *Background* ........................................................................................... 1
    B. *The Second Amended Complaint Alleges "Garden Variety" Gender Discrimination.* ........................................................................ 1
    C. *Title IX Flatly Prohibits Sexual Orientation Discrimination.* ............. 2
    D. *Plaintiffs Allegations Of "Gender Stereotypes" Plead A Violation Of Title IX* ............................................................................ 3
    E. *Plaintiffs Have Alleged Retaliation.* ................................................... 4
    F. *Plaintiffs May Divide Their Title IX Claim.* ....................................... 4

II. STATEMENT OF FACTS ................................................................................ 4
    A. *Title IX Amendments* ............................................................................ 4
    B. *The Complaint Alleges Retaliation* ...................................................... 5

III. DISCUSSION ................................................................................................... 6
    A. *Plaintiffs' TAC Alleges Violations of Title IX* ...................................... 6
        1. *The TAC Alleges Straightforward Gender Discrimination* ........ 7
        2. *Title IX Prohibits Sexual Orientation Discrimination.* ............... 8
        3. *Plaintiffs Allege Sufficient "Gender Stereotypes" To Plead A Violation Of Title IX* ................................................................. 11
    B. *Plaintiffs Allege Retaliation* .............................................................. 13
    C. *The Third, Fourth and Fifth Claims Are Pleading Appropriately.* .... 13
    D. *Pepperdine's Challenge To Pre-judgment Interest Should Be Denied.* ................................................................................................ 14

IV. CONCLUSION ............................................................................................... 14

2079-1002 / 418549.1

i

OPPOSITION TO DEFENDANT PEPPERDINE UNIVERSITY'S MOTION TO DISMISS THIRD, FOURTH AND FIFTH
CAUSES OF ACTION OF PLAINTIFF'S THIRD AMENDED COMPLAINT

# TABLE OF AUTHORITIES

**Page**

## CASES

*Brown v. Board of Education*
    347 U.S. 483 1954)..................................................................................9

*Franklin V. Gwinnett County Public Schools*
    503 U.S. 75 (1992)................................................................................11

*Latta v. Otter*
    771 F. 3d 456 (9th Cir. 2014)..................................................................1

*Martine v. Swartz Creek Community Schools*
    419 F. Supp. 2d 967 (E.D. Mich. 2006)................................................12

*Maynard v. Hill*
    125 U.S. 190 (1888)................................................................................9

*McCormick v. School Dist. of Mamaroneck*
    370 F.3d 275 (2d Cir. 2004)....................................................................7

*Meritor Savings Bank, FSB v. Vinson*
    477 U.S. 57 (1986)................................................................................11

*Montgomery v. Independent School District*
    107 F. Supp. 2d 1981 (D. Minn. 2000)..................................................11

*Obergefell v. Hodges*
    576 U.S. __ (2015)...................................................................................2

*Oncale v. Sundowner Offshore, Services, Inc.*
    523 U.S. 75, 118 S. Ct. 998, 140 L. Ed. 2d 201 (1998).......................12

*Parker v. Franklin Cty. Comm. School Corp.*
    667 F.3d 910 (7th Cir. 2012)...................................................................7

*Ray v. Antioch Unified School District*
    107 F. Supp. 2d 1165 (2000)...............................................................2, 8

*Schroeder v. Maumee Board of Education*
    296 F. Supp. 2d 869 (N.D. Ohio 2003)................................................2, 8

*SmithKline Beecham Corp. v. Abbott Labs.*
    740 F. 3d 471 (9th Cir. 2014)..................................................................1

*Snelling v. Fall Mountain Regional School District*
    2001 WL 276975 (D. NH 2001),...........................................................11

*United States v. Windsor*
    133 S. Ct. 2675 (2013)............................................................................1

2079-1002 418549.1

ii

OPPOSITION TO DEFENDANT PEPPERDINE UNIVERSITY'S MOTION TO DISMISS THIRD, FOURTH AND FIFTH CAUSES OF ACTION OF PLAINTIFF'S THIRD AMENDED COMPLAINT

## I. PRELIMINARY STATEMENT

Plaintiffs Haley Videckis and Layana White allege, in their Third Amended Complaint ("TAC"), that Pepperdine University discriminated against and harassed them on account of their *gender*, because of their *sexual orientation* and as a result of *gender stereotypes*. All of these allegations give rise to claims under Title IX, but any one of them is sufficient to survive this Motion to Dismiss.

### A. Background

This Court observed in its prior Order that the recent decisions in *Windsor*, *SmithKline* and *Latta* suggest that the "bounds" of Title IX may not be limited to gender *per se*, and that "the distinction between sexual orientation discrimination and sexual discrimination is illusory" (Doc. 25 at 15-16 ("Order") discussing *United States v. Windsor*, 133 S. Ct. 2675 (2013); *SmithKline Beecham Corp. v. Abbott Labs.*, 740 F. 3d 471, 483 (9th Cir. 2014 and *Latta v. Otter*, 771 F. 3d 456, 479-95 (9th Cir. 2014 (collectively "*Windsor* et al.").)

In response, Pepperdine's renewed Motion argues the following about Title IX: (1) Title IX should be interpreted in the same fashion as Title VII, and that the word "sex" in each law has been read to mean "gender" and not "sexual orientation" (Doc. 33 at 5-14); (2) that *Windsor*, *SmithKline* and *Latta* represent changes to the treatment of sexual orientation under the fourteenth amendment, but that these changes are inapplicable to Title IX (Doc. 33 at 14-19.); and (3) Because Plaintiffs do not allege the types of gender stereotyping typical of "harassment" cases (*i.e.* Plaintiffs do not allege that they behaved and/or looked like men) they cannot proceed in this case (Doc. 33 at 19-22.) None of these arguments are well taken.

### B. The Second Amended Complaint Alleges "Garden Variety" Gender Discrimination.

This Court need not even consider whether Title IX prohibits sexual orientation discrimination, or whether Plaintiffs have adequately pleaded gender stereotypes. Plaintiffs allege straightforward gender discrimination, *i.e.* that they

2079-1002 / 418549.1

1

OPPOSITION TO DEFENDANT PEPPERDINE UNIVERSITY'S MOTION TO DISMISS THIRD, FOURTH AND FIFTH CAUSES OF ACTION OF PLAINTIFF'S THIRD AMENDED COMPLAINT

were treated differently than their male counterparts on the Men's Basketball Team. Plaintiffs allege that they, as members of the Women's Basketball Team, were subjected to policies, scrutiny, and medical requests that their male counterparts were not. Plaintiffs allege that they were subjected to different dating rules and policies (*e.g.* Doc. 31 ¶¶ 19, 20, & 27); were subjected to different and offensive inquires into the intimate affairs of their lives (*e.g.* Doc. 31 ¶¶ 19, 20, & 21-26); were required to provide reproductive medical records (*e.g.* Doc. 31 ¶¶ 19, 20, & 54-56); and that Layana received different treatment than male basketball players in the processing applications to play sooner as transfer students (*e.g.* Doc. 31 ¶¶ 19, 20 & 89). Different treatment of women and men in athletics rests at the heart of Title IX and these allegations alone are sufficient to state a claim for relief.

### C. *Title IX Flatly Prohibits Sexual Orientation Discrimination.*

It is true that many courts have ruled that *Title VII* does not outlaw sexual orientation discrimination. Pepperdine inexplicably devotes nine pages of its brief to make this obvious point about Title VII.

Conspicuously absent from Pepperdine's Title VII opus, however, is any discussion, much less refutation of the cases where Courts hold that *Title IX* prohibits sexual orientation discrimination. *See, e.g., Ray v. Antioch Unified School District*, 107 F. Supp. 2d 1165, 1170 (N.D. Cal. 2000) (mistreatment of student on account of his perceived sexuality was "on the basis of sex" and prohibited by Title IX); *Schroeder v. Maumee Board of Education*, 296 F. Supp. 2d 869, 880 (N.D. Ohio 2003) (where student was perceived to be gay the court permitted a Title IX claim to survive summary judgment because "[a] jury could find that this harassment, and the failure to punish it, was motivated by plaintiff's *sex*" (emphasis added)).

These decisions pre-date *Windsor* et al. and also *Obergefell v. Hodges*, 576 U.S. __ (2015). It is true, as Pepperdine argues, that *Windsor* et al do not directly concern Title IX. But these cases, and *Obergefell* represent a swift change in the

2079-1002 / 418549.1

2

OPPOSITION TO DEFENDANT PEPPERDINE UNIVERSITY'S MOTION TO DISMISS THIRD, FOURTH AND FIFTH CAUSES OF ACTION OF PLAINTIFF'S THIRD AMENDED COMPLAINT

jurisprudence regarding gay rights and reflect the increasing recognition that discrimination based on gender and sexual orientation are intertwined and indistinguishable. In *Latta*, Judge Berzon observed that laws prohibiting same-sex marriage necessarily discriminate based on the gender of those effected. This reasoning is reflected in the cases (discussed below) which seize on the concept of "gender stereotypes" as a basis to find that mistreatment on account of sexual orientation violates Title IX's prohibition against discrimination based on "sex." In light of *Windsor* et al is a small step to conclude that Title IX prohibits sexual orientation discrimination and one that would be likely welcomed by the Ninth Circuit.

### D. Plaintiffs Allegations Of "Gender Stereotypes" Plead A Violation Of Title IX.

Plaintiffs allege that because of their status as *female* basketball players they were stereotyped as gay or bisexual, and mistreated in the ways alleged in the TAC. (Doc. 31 ¶¶ 19 & 20.) Pepperdine argues that such stereotyping does not exactly match up with the cases where Title VII and Title IX have been applied to protect individuals who were mistreated because they looked and acted like a different gender (*i.e.* they did not conform to gender stereotypes.) (Doc. 33 19-22.) However, the reasoning underpinning the "gender stereotyping" cases is equally applicable here. Those cases recognize that the mistreatment of a plaintiff based on "sexual orientation" necessarily includes, as a component, discrimination and/or harassment based on gender. The gender component fulfills Title IX's requirement that discrimination be because of "sex." None of the cases cited by Pepperdine limit actionable stereotyping to how individuals look or act, and Pepperdine does not explain why Plaintiffs' specific allegations of stereotyping do not implicate Title IX. Plaintiffs' allegations that Pepperdine stereotyped them as gay/bisexual "female" basketball players is a form of gender discrimination plainly prohibited by Title IX.
///

2079-1002 / 418549.1

3

OPPOSITION TO DEFENDANT PEPPERDINE UNIVERSITY'S MOTION TO DISMISS THIRD, FOURTH AND FIFTH CAUSES OF ACTION OF PLAINTIFF'S THIRD AMENDED COMPLAINT

### E. Plaintiffs Have Alleged Retaliation.

Pepperdine's motion to dismiss the fifth claim, which alleges retaliation, simply misrepresents what Plaintiffs have actually alleged. Plaintiffs allege that they complained about inquiries into their sexuality and relationships (protected activities) and that they were retaliated against, in various ways, as a result of these complaints. Pepperdine's motion simply ignores these allegations and is therefore without merit.

### F. Plaintiffs May Divide Their Title IX Claim.

Pepperdine takes issue with Plaintiffs' decision to separate their various Title IX theories into claims three, four and five. However, Pepperdine provides no real reason why this is inappropriate. In the event that this Court agrees with Pepperdine, then Plaintiffs' seek leave to prepare an amended pleading to combine all these theories into one claim.

## II. STATEMENT OF FACTS

In the interest of brevity, and given this Court's familiarity with the facts, Plaintiffs will not, in this brief, provide a full recitation of their allegations. The current motion challenges Plaintiffs' claims under Title IX and that they were retaliated against. Accordingly, this truncated Statement of Facts will focus on these issues.

### A. Title IX Amendments.

In response to Pepperdine's first motion to dismiss, this Court granted Plaintiffs leave to amend their Title IX claim. However, the Court also observed that the bounds of Title IX appear broad enough to encompass Plaintiffs' claims as originally pleaded.

Nonetheless, Plaintiffs have amended their Complaint, and especially in paragraphs 19 and 20, to specifically allege that Plaintiffs, as women, were treated differently than their male counterparts on Pepperdine's Men's Basketball Team. The TAC alleges that these actions were motivated by gender stereotypes and by

2079-1002 / 418549.1

4

OPPOSITION TO DEFENDANT PEPPERDINE UNIVERSITY'S MOTION TO DISMISS THIRD, FOURTH AND FIFTH CAUSES OF ACTION OF PLAINTIFF'S THIRD AMENDED COMPLAINT

anti-LGBT animus. Specifically, Paragraphs 19 and 20 allege:

> 19. The University's treatment of Plaintiffs and their perceived and/or actual sexual orientation and/or relationship was, in part, motivated and driven by gender stereotypes held by the University, its staff and employees of Plaintiffs as female athletes and specifically women basketball players. For example, the University and its employees and staff made improper inquiries into the intimate, sexual affairs of the Plaintiffs, as female athletes, which were not, and would not, be made of (or to) their similarly situated male athlete counterparts. Moreover, Pepperdine, and the Coaches of the Pepperdine women's basketball team, made statements and announced policies, practices and rules relating to sexual orientation (and specifically "lesbianism") during Plaintiffs' tenure there, whereas no similar comments or rules were made regarding sexual orientation for Plaintiffs' male counterparts. Furthermore, the refusal by the University and its employees and staff, to accept or accede to Plaintiffs' efforts to maintain the confidentiality of their sexual orientation and/or relationship amounted to different treatment than would have been afforded to similar requests by Plaintiffs' male counterparts.
>
> 20. In addition, the University, its staff and employees announced, and implemented, treatment for those, like Plaintiffs, who were in same gender relationships different than the treatment afforded athletes in opposite gender relationships.

Plaintiffs' Title IX claim now more clearly alleges that they, as women, received different treatment than men, a straightforward claim of gender discrimination.

### B. The Complaint Alleges Retaliation.

Pepperdine wrongly suggests that because Plaintiffs sought to maintain the confidentiality of their relationship and sexual orientation, they cannot make out a claim for retaliation. (Doc. 33 at 23.) However, Plaintiffs allege that they complained about the fact that the academic advisor and coaches were repeatedly (and in fact obsessively) inquiring about their sexuality and relationships -- which

2079-1002 418549 1

5

OPPOSITION TO DEFENDANT PEPPERDINE UNIVERSITY'S MOTION TO DISMISS THIRD, FOURTH AND FIFTH CAUSES OF ACTION OF PLAINTIFF'S THIRD AMENDED COMPLAINT

are protected activities -- and that thereafter, they were retaliated against.

The TAC alleges that Layana complained to Coach Ryan, at the end of April, 2014, about the fact that Adi (the academic advisor) was repeatedly asking both Plaintiffs about their private lives. (*Id.* 31 ¶ 28). In June, 2014, Haley complained to Coach Ryan about Karissa (a trainer) improperly inquiring about Haley's sexuality and relationship with women. (*Id.* 31 ¶ 34.) Coach Ryan refused to respond to Haley's concerns, even after Karissa admitted to the wrongdoing, and demanded that the issues be "brushed under the rug." (*Id.* ¶ 35.)

The TAC alleges that the following retaliatory acts were taken in response to the foregoing complaints by Haley and Layana: Coach Ryan refused to process Layana's appeal to play as a transfer athlete (Doc. 31 ¶ 36); Adi continued her harassing an inappropriate inquiries (*Id.* ¶ 38); Coach Ryan changed the study hall rules to require additional time by Layana (*Id.* ¶ 39); and Plaintiffs were falsely accused of cheating (*Id.* ¶ 41.)

Then, in August, 2014, Layana complained to Coach Ryan about the fact that he, and other coaches had been inquiring and harassing Plaintiffs about their relationship and therefore asking if they were gay. (*Id.* ¶ 43.) Thereafter, Plaintiffs allege they were retaliated against in the following ways: They were falsely accused of study hall misconduct (*Id.* ¶ 45); Coach Ryan and others refused to medically clear Haley to play (Id. ¶ 47-69); Coach Ryan threatened to disposses Haley of her scholarship (*Id.*); University's medical staff demanded that Plaintiffs turn over their gynecological records (*Id.*); and other misconduct.

## III. DISCUSSION

### A. *Plaintiffs' TAC Alleges Violations of Title IX.*

This Court should deny the motion to dismiss the Title IX claims for any of the following reasons: (1) Plaintiffs allege, plain and simple, that they were treated differently on account of gender in violation of Title IX; (2) Given the current state of the law after *Windsor* et al., this Court should conclude that Title IX prohibits

discrimination based on sexual orientation; and/or (3) Plaintiffs' allege that they were mistreated based upon gender stereotypes of female athletes and such conduct violates Title IX.

### 1. The TAC Alleges Straightforward Gender Discrimination.

Pepperdine's brief consumes itself with the relationships between Title VII, Title IX, and sexual orientation discrimination. However, Pepperdine does not address the TAC's new allegations, which specifically describe how the University treated Plaintiffs, as women, differently from their male counterparts.

Virtually any type of different treatment of men and women can trigger a violation of Title IX; in fact, even differences on matters as mundane as the scheduling of competitive seasons can violate Title IX. *See McCormick ex rel. McCormick v. School Dist. of Mamaroneck*, 370 F.3d 275, 294 (2d Cir. 2004) (holding that "scheduling girls' soccer in the spring [instead of the fall] clearly creates a disparity—boys can strive to compete in the Regional and State Championships in soccer and girls cannot"); *Parker v. Franklin Cty. Comm. School Corp.*, 667 F.3d 910, 925 (7th Cir. 2012) (holding that scheduling boys' basketball games on primetime nights more often than girls' basketball games can be disparate treatment under Title IX).

The TAC alleges less mundane differences in the University's policies and practices applied to the Women's and Men's basketball teams. Paragraphs 19 and 20 allege that (1) the University made repeated inquiries about Plaintiffs' sexuality and same-sex relationships, and that such inquiries were not made of their counterparts on the men's basketball team; (2) the University, through the women's team coach, announced policies regarding sexual orientation and dating imposed on the women that did not apply to male athletes at Pepperdine; and (3) that Plaintiffs' requests for confidentiality about their relationship, which were ignored, received a different response than would have been given to their male counterparts. Plaintiffs also allege that they were required, as women, to produce their gynecological

2079-1002 / 418549.1

7

OPPOSITION TO DEFENDANT PEPPERDINE UNIVERSITY'S MOTION TO DISMISS THIRD, FOURTH AND FIFTH CAUSES OF ACTION OF PLAINTIFF'S THIRD AMENDED COMPLAINT

1 records whereas male athletes were not subjected to such requests for reproductive or sexual medical information. Layana specifically alleges that the University did not process her application to play as a transfer student, whereas it did so for male athletes.

Under *Parker* and *McCormick* these allegations are manifestly adequate to establish a violation of Title IX based on different treatment of plaintiffs as women. Regardless of whether Pepperdine's different treatment of women was motivated by anti-LGBT animus or gender stereotyping, the simple fact remains: Plaintiffs allege, in the TAC, that they were treated differently by Pepperdine, on account of their gender, an obvious violation of Title IX.

### 2. *Title IX Prohibits Sexual Orientation Discrimination*.

As this Court observed in the Order, the decisions in *Windsor* et al. demonstrate that the law "is far from settled insofar as determining where sexual orientation lies within the framework of gender-based discrimination." (Doc. 25 at 15-16 discussing *Windsor* et al.) It is true, as Pepperdine argues, that most of the Title VII cases find that the law does not protect employees from discrimination in the workplace on account of their sexual orientation. (Doc. 33 at 9:7-14:4.)

In several cases, however, Courts have read Title IX as flatly protecting students from sexual orientation discrimination in educational institutions. *Ray v. Antioch Unified School District*, 107 F. Supp. 2d 1165, 1170 (2000) (mistreatment of Plaintiff on account of his perceived sexuality was "on the basis of sex" and prohibited by Title IX); *Schroeder v. Maumee Board of Education*, 296 F. Supp. 2d 869, 880 (N.D. Ohio 2003) (where student was perceived to be gay the court permitted a Title IX claim to survive summary judgment because "[a] jury could find that this harassment, and the failure to punish it, was motivated by plaintiff's

2079-1002 / 418549.1

8
OPPOSITION TO DEFENDANT PEPPERDINE UNIVERSITY'S MOTION TO DISMISS THIRD, FOURTH AND FIFTH CAUSES OF ACTION OF PLAINTIFF'S THIRD AMENDED COMPLAINT

sex.").[1]

In *Ray*, the child of a transgendered mother was harassed and discriminated against because he was perceived to be homosexual and sued a school district for violation of Title IX. *Ray*, 107 F. Supp. at 1166-67. Like Pepperdine, the school district sought to dismiss Ray's claim arguing that Title IX does not prohibit "discrimination on the basis of homosexuality." *Id.* at 1067. The *Ray* court disagreed and reasoned that "although Plaintiff's complaint makes no specific characterization of the harassing conduct as 'sexual' in nature, it is reasonable to infer that the basis of the attacks was a perceived belief about Plaintiff's sexuality, *i.e.* that Plaintiff was harassed *on the basis of sex*." *Id.* at 1170 (emphasis in original). *Ray* holds, flatly, that Title IX prohibits discrimination on account of sexual orientation.

The reasoning in *Schroeder* mirrors that in *Ray*. *Schroeder*, 296 F. Supp. at 880. In *Schroeder*, a student whose brother was gay spoke out in school in favor of gay rights. *Id.* at 870-71. Other students harassed him based on the perception that the student, himself, was gay. *Id.* As in *Ray*, the school district and individual administrators in *Schroeder* sought summary judgment against the student's Title IX claim on the theory that the statute did not prohibit sexual orientation discrimination. *Id.* at 879-80. The *Schroeder* court denied the motion for summary

---

[1] Although not explicitly stated, these more expansive readings of Title IX appear to arise out of the fact that the plaintiffs are typically young people under the care and supervision of adults at schools. *See, e.g., Brown v. Board of Education*, 347 U.S. 483, 493 (1954) (education is "the very foundation of good citizenship" and the "principal instrument in awakening the child to cultural values"). Given that this case concerns LGBT rights, it is noteworthy that there are echoes of *Brown* in *Obergefell's* recognition of the rights of same-sex couples to participate in marriage. *Obergefell*, slip op, at 16 ("marriage is 'the foundation of the family and of society, without which there would be neither civilization nor progress.'" (quoting *Maynard v. Hill*, 125 U.S. 190, 211 (1888)).)

judgment and ruled, much like the court in *Ray*, that "[a] jury could find that this harassment and the failure to punish it, was motivated by the plaintiff's sex." *Id.* at 880.

This Court should conclude, as did the courts in *Ray* and *Schoreder,* that Title IX prohibits discrimination and harassment based on sexual orientation, because such misbehavior is on account of "sex". Indeed this Court's analysis in the prior Order -- that "the distinction between sexual orientation discrimination and sexual discrimination is illusory" – mirrors the reasoning in *Ray* and *Schoreder*. (Doc. 25 at 16).

Pepperdine argues that *Windsor* et al. do not compel the conclusion that Title IX prohibits sexual orientation discrimination because these cases arise under the Fourteenth Amendment and do not address the meaning of the statutory language in Titles VII and IX. (Doc. 14-19.) This misses the point. These cases reflect a jurisprudential sea change in the recognition of legal protections of gay people, and their behavior. The Supreme Court's decision in *Obergefell* -- finding a constitutional right for same sex couples to marry -- arrives a mere 29 years after *Bowers v. Hardwick* which upheld Georgia's anti-sodomy law.

*Latta* and *SmithKline* must be read in this context. Judge Berzon's conclusion in *Latta* that same-sex marriage proscriptions discriminate on the bases of "sex," is obviously not a direct interpretation of Title IX. *Latta*, 771 F. 3d at 479-95 (Berzon, J., concurring). Neither is the decision in *SmithKline*, which applied, for the first time "heightened scrutiny" to the peremptory challenge of a gay juror. *SmithKline*, 740 F. 3d at 483. These cases make clear, however, that the Ninth Circuit precedent does not foreclose, and likely welcomes the conclusion that Title IX can, and should be interpreted to prohibit discrimination on account of sexual orientation.[2]

---

[2] This would not be the first time for judicial expansion of rights under Title IX. (footnote continued)

### 3. *Plaintiffs Allege Sufficient "Gender Stereotypes" To Plead A Violation Of Title IX.*

If this Court is disinclined to issue a blanket ruling that Title IX prohibits sexual orientation discrimination, there is no question that Plaintiffs have alleged mistreatment on account of gender stereotypes.

Courts have concluded that Title IX protects students mistreated on account of their actual or perceived homosexuality by reasoning that such conduct involves gender stereotyping. For example, in *Snelling v. Fall Mountain Regional School District*, 2001 WL 276975 (D. NH 2001), a student was harassed and mistreated, in awful ways, by other students who accused him of being gay and uttered ugly epitaphs. *Snelling* at *1-3. The school district sought to summarily dismiss the Title IX claim on the grounds that the statute did not prohibit discrimination based on sexual orientation. *Id*. at *4. The court denied the motion reasoning that plaintiff's claim sought redress for harassment based on his perceived sexual orientation which was intertwined with stereotypes about his gender. *Id*.

Pepperdine cites *Montgomery v. Independent School District*, 107 F. Supp. 2d 1981 (D. Minn. 2000) for the proposition that Title IX provides no protection against discrimination based on sexual orientation. (Doc. 33 at 18.) However, the *Montgomery* court *actually allowed* a Title IX claim to proceed based on gender stereotypes where the plaintiff claimed that "his harassers called him names targeted

---

Both statues are written to prohibit "discrimination" and neither include any language prohibiting "sexual harassment" or the creation of "hostile environments." It was the Courts, many years after these laws were adopted, that interpreted Title VII and Title IX to prohibit sexual harassment and discrimination. *Meritor Savings Bank, FSB v. Vinson*, 477 U.S. 57, 66-67 (1986) (interpreting Title VII to mean that discrimination based on "sex" includes the creation of a hostile or abusive work environment); *Franklin v. Gwinnett County Public Schools*, 503 U.S. 75 (1992) (sexual harassment constitutes discrimination on account of "sex" under Title IX).

2079-1002 / 418549.1

11

OPPOSITION TO DEFENDANT PEPPERDINE UNIVERSITY'S MOTION TO DISMISS THIRD, FOURTH AND FIFTH CAUSES OF ACTION OF PLAINTIFF'S THIRD AMENDED COMPLAINT

at homosexuals and spread rumors about his sexual orientation, as well as subjecting him to more severe forms of misconduct such as asking him for sexual favors, grabbing his buttocks and inner thighs, and subjecting him to pretended anal rape." *Montgomery* at 1092. The *Montgomery* court relied upon the Supreme court decision in *Oncale v. Sundowner Offshore, Services, Inc.* 523 U.S. 75, 118 S. Ct. 998, 140 L. Ed. 2d 201 (1998). *Montgomery* at 1091. In *Oncale,* the Supreme Court confronted the question of whether same sex harassment, which was not motivated by sexual desire, violated Title VII. *Oncale* concluded that a person is mistreated "because of sex" where the alleged misconduct "was motivated by sexual desire, that he or she was harassed in such sex-specific terms as to raise an inference of hostility towards his or her sex, or that employees of one sex were treated less favorably than those of other sex." *Montgomery* at 1091(discussing *Oncale*, 523 U.S. at 998.)[3]

      Plaintiffs concede that they do not allege that they were stereotyped based on "typical notions about how men and women should appear and behave." (Doc. 33 at 21.) However, Pepperdine is simply wrong to suggest that Plaintiffs allegations of gender stereotyping amount to "bootstrapping" a claim for sexual orientation discrimination into a Title IX claim. (Doc. 22 at 21.) Nor does Pepperdine cite this Court to any authority suggesting, much less holding, that the "gender stereotyping" doctrine is limited to instances where a plaintiff acts like someone of the opposite gender. (Doc. 33 at 19-22.)

      Plaintiffs' allegations of gender stereotyping are well within the bounds of the reasoning of *Snelling* and *Montgomery*. Plaintiffs allege that Pepperdine, and its officials, staff and coaches, made stereotypical assumptions about Plaintiffs'

---

[3] Another case involving a gay student bringing claim under Title IX is *Martine v. Swartz Creek Community Schools*, 419 F. Supp. 2d 967 (E.D. Mich. 2006) although there is no discussion of the basis for Title IX's applicability.

sexuality and relationships based on their status as *female* basketball players. (Doc. 31 ¶¶ 19 and 20.) They further allege that these assumptions were not made about their male counterparts on the Pepperdine's Men's Basketball Team and that Plaintiffs were, as a consequence, treated differently. (*Id.*) Plaintiffs' allegations about the manner in which they were perceived and treated are inextricably linked with their gender. Plaintiffs do not allege that Coach Ryan uttered gender-neutral comments about gay people; he disparaged "lesbians" and their relationships. These allegations fall squarely within *Oncale* insofar as Plaintiffs allege "hostility towards [their] sex, [and that they] were treated less favorably that those of other sex." *Montgomery* at 1091(citing *Oncale*, 523 U.S. at 998.)

This Court should find that Plaintiffs' claims under Title IX are sustained based on any or all of the foregoing, *i.e.* Plaintiffs have alleged gender discrimination, plain and simple; and/or Title IX prohibits discrimination based on sexual orientation; and/or Plaintiffs have alleged, as a component of their claims, that they were subjected to gender stereotyping.

### B. *Plaintiffs Allege Retaliation*

Pepperdine's sole argument here is that Plaintiffs kept their sexuality and relationship secret, and thus Pepperdine could not have retaliated against them. (Doc. 33 at 22-24.) Of course, this ignores the fact that Plaintiffs allege that they complained to Coach Ryan and others about the inquiries into their sexuality and relationship, and that Coach Ryan and other retaliated against them in various ways. (*See* Section II B above.) Pepperdine simply ignores these plain allegations of retaliation and, accordingly, its motion to dismiss the fifth cause of action should be denied.

### C. *The Third, Fourth and Fifth Claims Are Pleading Appropriately.*

Pepperdine objects to Plaintiffs' decision to divide up their various theories under Title IX into three claims. (Doc. 33 at 24-25.) This is nothing more than an objection to form over substance. Pepperdine provides no analysis of why this

2079-1002 / 418549.1

13

OPPOSITION TO DEFENDANT PEPPERDINE UNIVERSITY'S MOTION TO DISMISS THIRD, FOURTH AND FIFTH CAUSES OF ACTION OF PLAINTIFF'S THIRD AMENDED COMPLAINT

manner of pleading is inappropriate. However, in the event the Court agrees that the Title IX claims should be combined, or rearranged in some other fashion, and that such reformatting cannot be accomplished at some other stage of this lawsuit, Plaintiffs request leave to amend these claims to meet whatever technical pleading requirements the Court may prefer.

### D. *Pepperdine's Challenge To Pre-judgment Interest Should Be Denied.*

Given that this case is at the earliest stages, and the nature of the claims remains in flux, this Court should defer ruling on the question of pre-judgment interest until later in the case. Pepperdine has not moved to strike the pre-judgment interest language in the TAC which can be accomplished, if appropriate at a later time.

## IV. CONCLUSION

For all of the foregoing reasons, Pepperdine's motion to dismiss should be denied in its entirety.

Dated: June 29, 2015                     Respectfully submitted:

**ZUBER LAWLER & DEL DUCA LLP**
JEREMY J. GRAY
JEFFREY J. ZUBER


By: s/*Jeremy J. Gray*
Attorneys for Plaintiffs Haley Videckis and Layana White

**PROOF OF SERVICE**

**STATE OF CALIFORNIA, COUNTY OF LOS ANGELES**

At the time of service, I was over 18 years of age and **not a party to this action**. I am employed in the County of Los Angeles, State of California. My business address is 777 S. Figueroa Street, 37th Floor, Los Angeles, California 90017 USA.

On June 29, 2015, I served true copies of the following document(s) described as **OPPOSITION TO DEFENDANT PEPPERDINE UNIVERSITY'S MOTION TO DISMISS THIRD, FOURTH AND FIFTH CAUSES OF ACTION OF PLAINTIFFS' THIRD AMENDED COMPLAINT AND PRAYER FOR PREJUDGMENT INTEREST PURSUANT TO FED.R.CIV.P. 12(b)(6)** on the interested parties in this action as follows:

Paula Tripp Victor
Peter B. Rustin
ANDERSON, McPHARLIN & CONNERS LLP
444 South Flower Street 31st Floor
Los Angeles, California 90071-2901
Telephone: (213) 688-0080
Facsimile: (213) 622-7594
Email: ptv@amclaw.com
       pbr@amclaw.com
Attorneys for Defendant Pepperdine University

**BY CM/ECF NOTICE OF ELECTRONIC FILING:** I caused said document(s) to be served by means of this Court's electronic transmission of the Notice of Electronic Filing through the Court's transmission facilities, to the parties and/or counsel who are registered CM/ECF Users set forth in the service list obtained from this Court.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

Executed on June 29, 2015, at Los Angeles, California.

*/s/ Debbie J. Ellis*
Debbie J. Ellis