1   PAULA TRIPP VICTOR (Bar No. 113050)
       ptv@amclaw.com
2   PETER B. RUSTIN (Bar No. 181734)
       pbr@amclaw.com
3   ANDERSON, McPHARLIN & CONNERS LLP
    707 Wilshire Boulevard, Suite 4000
4   Los Angeles, CA  90017-3623
    TELEPHONE: (213) 688-0080 ♦ FACSIMILE: (213) 622-7594
5
6   **Attorneys for Defendant**
    **PEPPERDINE UNIVERSITY**
7
8              **UNITED STATES DISTRICT COURT**
9       **CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION**
10
11  HALEY VIDECKIS and                 Case No. 2:15-cv-00298-DDP (JCx)
    LAYANA WHITE, individuals,
12
            Plaintiffs,                **PEPPERDINE UNIVERSITY'S**
13                                      ***AMENDED* REPLY TO**
         vs.                           **PLAINTIFFS' OPPOSITION TO**
14                                      **MOTION TO DISMISS THIRD**
    PEPPERDINE UNIVERSITY, a            **AMENDED COMPLAINT AND**
15  corporation doing business in       **PRAYER FOR PREJUDGMENT**
    California,                         **INTEREST PURSUANT TO**
16                                      **F.R.C.P. 12(b)(6)**
            Defendant.
17
                                        **Date:    July 20, 2015**
18                                      **Time:    10:00 a.m.**
                                        **Ctrm:    3**
19
20                                      Trial Date:    None
21
22
23
24
25
26
27
28

ANDERSON, McPHARLIN & CONNERS LLP
LAWYERS
707 WILSHIRE BOULEVARD, SUITE 4000
LOS ANGELES, CALIFORNIA 90017-3623
TEL (213) 688-0080 • FAX (213) 622-7594

1332305.1 05764-048

*AMENDED* REPLY TO PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

ANDERSON, McPHARLIN & CONNERS LLP

LAWYERS
707 WILSHIRE BOULEVARD, SUITE 4000
LOS ANGELES, CALIFORNIA 90017-3623
TEL (213) 688-0080 • FAX (213) 622-7594

# **TABLE OF CONTENTS**

**Page**

I.      INTRODUCTION ........................................................................... 1

II.     ARGUMENT AND AUTHORITY ................................................. 2

        A.      The Clear Gravamen of the TAC Is Sexual Orientation
                Discrimination ...................................................................... 2

        B.      The Third, Fourth and Fifth Causes of Action Must Be
                Dismissed Because Title IX Has No Applicability to Sexual
                Orientation Discrimination ................................................... 4

        C.      The Judicial Trend Toward Extending Constitutional Protections
                To Sexual Orientation Discrimination Has No Applicability to
                Plaintiffs' Title IX Claims ................................................... 7

        D.      The Plaintiffs Have Failed To Allege Facts To Support Their
                Claim That They Were Harassed Due To Their Failure To
                Conform To Gender Stereotypes ........................................ 11

        E.      The Fifth Cause Of Action Must Be Dismissed Because
                Plaintiffs Have Failed To Allege Any Actionable Retaliation
                Under Title IX .................................................................... 14

        F.      The Third, Fourth and Fifth Causes of Action For Violation Of
                Title IX Should Be Dismissed As They Are Uncertain And Not
                Legally Cognizable ............................................................ 15

        G.      Plaintiffs' Claim For Prejudgment Interest Should be Dismissed ........ 15

III.    CONCLUSION ........................................................................... 16

*AMENDED* REPLY TO PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS

1332305.1 05764-048

1

## <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

4

**Federal Cases**

5
6
*Beren v. Board of Trustees of California State University*,
2000 WL 951272 (N.D. Cal. March 27, 2007) ...................................... 6

7
8
*Bibby v. Philadelphia Coca Cola Bottling Co.*
260 F.3d 257 (3rd Cir. 2001) .............................................................. 8

9
10
*Brown v. Hot, Sexy & Safer Prods, Inc.*,
68 F.3d 525 (1st Cir. 1995) ................................................................ 5

11
*Cunningham v. City of Arvada*,
2012 WL 3590799 (D. Colo. June 12, 2012) .................................... 14

12
13
*Davis v. Monroe County Board of Education*,
526 U.S. 629 (1999) .......................................................................... 15

14
15
*In re Delorean Motor Co.*,
991 F.2d 1236 (6th Cir. 1993) ............................................................ 3

16
17
*Doe v. Petaluma City School Dist.*,
949 F. Supp. 1415 (N.D. Cal. 1996) ................................................... 5

18
19
*Essary v. Federal Express Corp.*,
161 Fed. Appx. 782 (10th Cir. 2006) ............................................... 14

20
21
*Galdieri- Ambrosini v. Nat. Realty & Dev.*,
136 F.3d 276, 289 (2nd Cir. 1998) ..................................................... 7

22
*Higgins v. New Balance Athletic Shoe, Inc.*,
194 F.3d 252, 259 (1st Cir. 1999) .................................................... 12

23
24
*Howell v. North Central College*,
320 F. Supp. 2d 717, 722 (N.D. Ill. 2004)........................................ 11

25
26
*Kiley v. ASCPA*,
296 Fed. Appx. 107 (2d Cir. 2008) ................................................... 8

27
*Latta v. Otter*,
771 F.3d 456 (9th Cir. 2014) .......................................... 7, 8, 9, 10

28

ANDERSON, McPHARLIN & CONNERS LLP
LAWYERS
707 WILSHIRE BOULEVARD, SUITE 4000
LOS ANGELES, CALIFORNIA 90017-3623
TEL (213) 688-0080 • FAX (213) 622-7594

ii

*Lipsett v. University of Puerto Rico*,
    864 F.2d 881, 896–97 (1st Cir. 1988) ..................................................................5

*Lochner v. New York*,
    198 U.S. 45, 76 (1905) .....................................................................................10

*Mabry v. State Bd. of Community Colleges and Occupational Educ.*,
    813 F.2d 311, 316 n. 6 (10th Cir. 1987) ...........................................................5

*Mansourian v. Regents*,
    602 F.3d 957 (9th Cir. 2010) ............................................................................15

*McCormick ex. rel. McCormick v. School Dist. of Mamaroneck*,
    370 F.3d 275 (2d Cir. 2004) ..............................................................................4

*Montgomery v. Independent School Dist.*,
    109 F. Supp. 2d 1081 (D. Minn. 2000) .......................................................5, 13

*Nichols v. Azteca Restaurant Enterprises, Inc.*,
    256 F.3d 864 (9th Cir. 2001) .........................................................................7, 11

*Obergefell v. Hodges*,
    576 U.S. _____ (2015) .................................................................................9, 10

*Oona R.-S v. McCaffrey*,
    143 F.3d 473 (9th Cir. 1998) ..............................................................................5

*Papelino v. Albany College*,
    633 F.3d 81 (2d Cir. 2011) .................................................................................5

*Parker v. Franklin Cty. Comm. School Corp.*,
    667 F.3d 910 (7th Cir. 2012) ..............................................................................4

*Preston v. Commonwealth of Virginia ex rel. New River Community College*,
    31 F.3d 203, 206 (4th Cir. 1994) ........................................................................5

*Price Waterhouse v. Hopkins*,
    109 S. Ct. 1775 (1989).................................................................................11, 13

*Prowel v. Wise Business Forms*,
    579 F.3d 285 (3rd Cir. 2009).............................................................................8

ANDERSON, MCPHARLIN & CONNERS LLP
LAWYERS
707 WILSHIRE BOULEVARD, SUITE 4000
LOS ANGELES, CALIFORNIA 90017-3623
TEL (213) 688-0080 • FAX (213) 622-7594

1332305.1 05764-048

AMENDED REPLY TO PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS

*Ray v. Antioch Unified School Dist.*,
  107 F. Supp. 2d 1165 (N.D. Cal. 2000)............................................................5, 7

*Reese v. Jefferson School Dist.*
  208 F.3d 736 (9th Cir. 2000) ............................................................15

*Schroeder v. Maumee Board of Education*,
  296 F. Supp. 2d 869 (N.D. Ohio 2003) ............................................5, 7

*Simonton v. Runyon*,
  232 F.3d 33 (2d Cir. 2000) ............................................................8

*Smith Kline Beecham Corp. v. Abbott Labs*,
  740 F.3d 471 (9th Cir 2014) ............................................................7, 9

*Snelling v. Fall Mountain Regional School Dist.*,
  2001 WL 276975 (D.N.H. March 21, 2001) ......................................5, 12, 13

*Walsh v. Tehachapi Unified School Dist.*,
  827 F. Supp. 2d 1107............................................................5

*Western Mining Counsel v. Watt*,
  643 F.2d 618 (9th Cir. 1981) ............................................................3

*United States v. Windsor*,
  133 S. Ct. 2675 (2013)............................................................7, 8, 10

**State Statutes**

California Civil Code §51(e)(5) ............................................................1

California Government Code §12926............................................................1

**Other Authorities**

SCHWARZER, TASHIMA & WAGSTAFFE *California Practice Guide –
  Federal Civil Procedure Before Trial* §8:27a ......................................3

ANDERSON, MCPHARLIN & CONNERS LLP
LAWYERS
707 WILSHIRE BOULEVARD, SUITE 4000
LOS ANGELES, CALIFORNIA 90017-3623
TEL (213) 688-0080 • FAX (213) 622-7594

I.      **INTRODUCTION**

Regardless of how tempting it may be to take a simplistic approach to the legal issues in this case by improperly analogizing them to the same-sex marriage cases recently afforded constitutional protection, this temptation must be overcome because they are inapposite.  This action involves the interpretation of a statute that prohibits discrimination based on one characteristic – a person's gender.  That statute, Title IX, does not consider, prohibit or allow discrimination on other characteristics such as sexual orientation; it is simply silent as to other types of discrimination other than gender discrimination.

It is because Title IX is silent as to sexual orientation discrimination that many states, including California, have enacted laws to fill that gap, thereby giving the residents of this state, including plaintiffs herein, a remedy in the event they have been the victims of discrimination based on their sexual orientation.[1]  As established in the Motion to Dismiss and below, while plaintiffs may have adequately pled a remedy in the Third Amended Complaint (TAC) for sexual orientation discrimination, that remedy is not Title IX.

In a futile effort to avoid decades of well-settled jurisprudence holding that sexual orientation is not protected by Titles VII/IX, plaintiffs ignore the inescapable fact that their complaint, at its core, relates solely to sexual orientation discrimination.  Unable to cite authority to support their claim that Title IX protects alleged harassment based on sexual orientation, plaintiffs cite inapposite authority pertaining to gender stereotype discrimination.  Plaintiffs also focus on isolated

---

[1] The fact that sexual orientation discrimination is different than discrimination based on one's sex is demonstrated by the definitions of prohibited conduct in such state statutes like California's Unruh Civil Rights Act under which plaintiffs seek relief in this case.  That Act defines "sexual orientation" as heterosexuality, homosexuality and bisexuality (Cal. Govt. Code §12926) whereas the definition of "sex" includes pregnancy and gender (Cal. Civ. Code §51(e)(5).)

ANDERSON, MCPHARLIN & CONNERS LLP
LAWYERS
707 WILSHIRE BOULEVARD, SUITE 4000
LOS ANGELES, CALIFORNIA 90017-3623
TEL (213) 688-0080 • FAX (213) 622-7594

ANDERSON, McPHARLIN & CONNERS LLP
LAWYERS
707 WILSHIRE BOULEVARD, SUITE 4000
LOS ANGELES, CALIFORNIA 90017-3623
TEL (213) 688-0080 • FAX (213) 622-7594

1  allegations in the TAC to demonstrate that this case is one about "straight forward

2  gender discrimination" (Opposition to Pepperdine's Motion to Dismiss

3  ("Opposition") at p. 1).  Despite the complete lack of allegations sufficient to

4  support gender stereotype or retaliation claims, plaintiffs merely insist the TAC

5  adequately alleges such claims when it does not.  Nor do plaintiffs cite any authority

6  to support their claim for prejudgment interest.  Thus, the motion to dismiss must be

7  granted.

8  **II.     ARGUMENT AND AUTHORITY**

9       **A.     The Clear Gravamen of the TAC Is Sexual Orientation**

10          **Discrimination**

11       Out of the haystack of the 158 paragraphs of the TAC, plaintiffs pull two

12  conclusory needles (¶¶ 19-20) in an effort to transform their case from one alleging

13  sexual orientation discrimination to a garden-variety gender discrimination case.

14  The court need look no further than paragraph 17 of the TAC to ascertain that this

15  case is, at its core, based upon plaintiffs' alleged sexual orientation.  There,

16  plaintiffs allege, in summary, that they were harassed and discriminated against

17  "based on their sexual orientation."  Even a cursory review of the dozens of other

18  paragraphs of the TAC make it clear that plaintiffs' claims arise not from disparate

19  treatment between plaintiffs (as female athletes) and male athletes.  Rather,

20  plaintiffs complain of inappropriate inquiries into their personal relationship (TAC,

21  ¶¶ 21-23; 25-26); statements about lesbianism (TAC, ¶ 27); and an alleged statement

22  by Coach Ryan that the personal relationship between players on the L.A. Sparks

23  caused the team to fall apart and lose.  (TAC, ¶ 37.)  The TAC is rife with

24  complaints about improper inquiries into plaintiffs' relationship, and allegedly

25  discriminatory pressure upon plaintiffs based on their sexual orientation.  (See, e.g.,

26  TAC, ¶ 136.)

27       To support their claims that the TAC alleges simple gender discrimination,

28  plaintiffs point to sparse allegations at paragraphs 19 and 20.  (Opposition at pp. 4-5;

7-8.)  With no detail whatsoever, plaintiffs conclusorily allege that Pepperdine made improper inquiries into the intimate, sexual affairs of plaintiffs, which were not made of (or to) their similarly situated male athlete counterparts.  (TAC, ¶ 19.) Plaintiffs allege (with no supporting facts) that no comments or rules were made concerning sexual orientation to male athletes, whereas Pepperdine allegedly made statements and announced policies relating to sexual orientation and "lesbianism." Despite the dizzying detail set forth in the TAC concerning the alleged intrusion into their personal lives, however, plaintiffs allege *no* facts to support the supposed disparate treatment between male and female athletes.

Notably, paragraphs 19 and 20 of the TAC are the sole basis for plaintiffs' claims of gender discrimination.  Their Complaint, proposed First Amended Complaint, and eventually filed First Amended Complaint,[2] had **no** allegations of gender discrimination.

In deciding a Rule 12(b)(6) motion, the Court need not accept conclusory allegations, legal characterizations, unreasonable inferences, or unwarranted deductions of fact as true.  *In re Delorean Motor Co.*, 991 F.2d 1236, 1240 (6th Cir. 1993); *Western Mining Counsel v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981). Plaintiffs proffer no details, no conversations, no policies and no communications (in stark contrast to the dozens of detailed conversations alleged in the TAC) to support their perfunctory claim that female athletes were treated differently than male athletes.  The conspicuous absence of any facts to underlie these skeletal allegations is "a danger sign that the plaintiff is engaged in a fishing expedition." SCHWARZER, TASHIMA & WAGSTAFFE *California Practice Guide – Federal Civil Procedure Before Trial* §8:27a.

---

[2] Previously attached to defendant's Request for Judicial Notice filed in support of its Motion to Dismiss the First Amended Complaint.

ANDERSON, MCPHARLIN & CONNERS LLP
LAWYERS
707 WILSHIRE BOULEVARD, SUITE 4000
LOS ANGELES, CALIFORNIA 90017-3623
TEL (213) 688-0080 • FAX (213) 622-7594

ANDERSON, McPHARLIN & CONNERS LLP
LAWYERS
707 WILSHIRE BOULEVARD, SUITE 4000
LOS ANGELES, CALIFORNIA 90017-3623
TEL (213) 688-0080 • FAX (213) 622-7594

1    Nor do the allegations of paragraph 20 of the TAC come close to alleging any

2  sort of gender-based discrimination.  Paragraph 20 of the TAC speaks of alleged

3  disparate treatment between athletes in same gender relationships versus athletes in

4  opposite gender relationships.  Either way, the treatment of genders is identical;

5  there is no gender discrimination.

6    Plaintiffs' reliance upon cases such as *McCormick ex. rel. McCormick v.*

7  *School Dist. of Mamaroneck*, 370 F.3d 275 (2d Cir. 2004) and *Parker v. Franklin*

8  *Cty. Comm. School Corp.*, 667 F.3d 910 (7th Cir. 2012) is misplaced.  Those cases

9  involve scheduling disparities between male and female sports teams.  The case at

10  bar, in contrast, is not about the disparate treatment between the men's and women's

11  basketball teams. Rather, it is about "the University's [alleged] deliberate

12  indifference to the invasion of privacy, harassment and discrimination based on

13  sexual orientation …."  (TAC, ¶ 18.)

14    In sum, the paucity of allegations concerning alleged disparate treatment

15  between female and male athletes – made for the first time in their proposed fourth

16  amended pleading -- stands in stark contradistinction to the multitude of allegations

17  pertaining to Plaintiffs' sexual orientation.  This Court should decline plaintiffs'

18  invitation to characterize their complaint as one about disparate treatment between

19  male and female athletes, and, instead, recognize that the case at bar is a case

20  involving alleged sexual orientation harassment.  As such, they cannot maintain a

21  claim for violation of Title IX.

22    **B.    The Third, Fourth and Fifth Causes of Action Must Be Dismissed**

23    **Because Title IX Has No Applicability to Sexual Orientation**

24    **Discrimination**

25    Plaintiffs vainly try to ignore the overwhelming body of case law that holds

26  that Title VII does not protect against sexual orientation discrimination as part of its

27  prohibition against discrimination based on sex and instead simply argue that the

28  cases cited by Pepperdine are not Title IX cases.  Plaintiffs, however, fail to cite **one**

ANDERSON, McPHARLIN & CONNERS LLP
LAWYERS
707 WILSHIRE BOULEVARD, SUITE 4000
LOS ANGELES, CALIFORNIA 90017-3623
TEL (213) 688-0080 • FAX (213) 622-7594

**single case** that states that Title IX cases are to be decided differently than Title VII. The opposite is true. There is no "daylight" between Title VII jurisprudence and Title IX jurisprudence. They are co-extensive. *See, e.g., Walsh v. Tehachapi Unified School Dist.*, 827 F. Supp. 2d 1107, n.1 (E.D. Cal. 2011); *Oona R.-S v. McCaffrey,* 143 F.3d 473, 476-77 (9th Cir. 1998); *Papelino v. Albany College,* 633 F.3d 81, 91 (2d Cir. 2011); *Doe v. Petaluma City School Dist.,* 949 F. Supp. 1415, 1421 (N.D. Cal. 1996) (citing *Preston v. Commonwealth of Virginia ex rel. New River Community College,* 31 F.3d 203, 206 (4th Cir. 1994); *Lipsett v. University of Puerto Rico,* 864 F.2d 881, 896–97 (1st Cir. 1988); *Mabry v. State Bd. of Community Colleges and Occupational Educ.,* 813 F.2d 311, 316 n. 6 (10th Cir. 1987), *cert. denied*, 484 U.S. 849, 108 S. Ct. 148, 98 L.Ed.2d 104 (1987)).

Indeed, many of the authorities cited by plaintiffs in **their** Opposition recognize that Title VII "is an appropriate guide in construing Title IX claims." *See, e.g., Ray v. Antioch Unified School Dist.*, 107 F. Supp. 2d 1165, 1169 (N.D. Cal. 2000); *accord, Snelling v. Fall Mountain Regional School Dist.*, 2001 WL 276975, n.3 (D.N.H. March 21, 2001) ("Cases pertaining to Title VII may be used by analogy in the context of Title IX claims. *See Brown v. Hot, Sexy & Safer Prods, Inc.*, 68 F.3d 525, 540 (1st Cir. 1995)"); *Schroeder v. Maumee Board of Education*, 296 F. Supp. 2d 869, 880 (N.D. Ohio 2003) (referring to Title VII to determine that same-sex sexual harassment is actionable under Title IX); *Montgomery v. Independent School Dist.*, 109 F. Supp. 2d 1081, 1091 (D. Minn. 2000) (Court applies Title VII precedents in analyzing Title IX claim). Clearly, the ambit of Title VII and of Title IX, as they apply to sexual orientation discrimination, is identical, and cases construing Title VII are valuable precedent in applying Title IX. Plaintiffs ignore this vast (and consistent) body of jurisprudence because it is fatal to their Title IX claims.

Nor do plaintiffs have any response to the decades of Ninth Circuit precedent recognizing that Title VII and Title IX do not prohibit discrimination on the basis of

ANDERSON, McPHARLIN & CONNERS LLP
LAWYERS
707 WILSHIRE BOULEVARD, SUITE 4000
LOS ANGELES, CALIFORNIA 90017-3623
TEL (213) 688-0080 • FAX (213) 622-7594

1  sexual preference.  (Motion to Dismiss, at pp. 6-9.)  Plaintiffs make no mention of

2  *Beren v. Board of Trustees of California State University*, 2000 WL 951272 at n.3

3  (N.D. Cal. March 27, 2007) (Title IX "does not … prohibit discrimination on the

4  basis of sexual orientation, rather, only on the basis of sex").  This court should not

5  ignore settled Ninth Circuit precedent and the overwhelming national consensus

6  holding that Title VII and Title IX do not protect against claims alleging sexual

7  orientation discrimination.

8         In a futile attempt to circumvent the weight of authority holding that

9  Title VII/Title IX do not protect against sexual orientation discrimination, plaintiffs

10  cite *Ray v. Antioch Unified School Dist.*, 107 F. Supp. 2d 1165, 1170 (2000) and

11  *Schroeder v. Maumee Board of Education*, 296 F. Supp. 2d 869 (N.D. Ohio 2003).

12  Because these cases merely involve gender stereotype student-on-student

13  discrimination, neither supports plaintiffs' argument.

14         In *Ray*, the plaintiff, a male student with a transgendered mother, was

15  subjected to harassing, intimidating and threatening behavior because of other

16  students' belief that plaintiff was a homosexual.  Because plaintiff was subject to

17  name calling and threats, the court held that a jury could find that the plaintiff was a

18  victim of sexual harassment.  *Id.* at 1170.  *Ray* was a gender stereotype case – the

19  plaintiff was harassed due to his mother's transgender status and his own targeting

20  as a perceived homosexual.  In contrast, the case at bar presents no allegations that

21  Plaintiffs were harassed based upon their gender characteristics.  Moreover, *Ray*

22  appears to be an outlier; no discussion was made of the extensive Ninth Circuit

23  decisions holding that Title VII and Title IX do not prohibit discrimination on the

24  basis of sexual orientation.

25         Plaintiffs' reliance upon *Schroeder v. Maumee Board of Education*, 296 F.

26  Supp. 2d 869 (N.D. Ohio 2003) is equally misplaced.  In *Schroeder*, the plaintiff

27  was called names such as "fag" and "queer,"  and was subject to sexual harassment

28  that included his face being pushed into a bus window, while his attackers told him

1332305.1 05764-048

1   to "Kiss it, you little fag. Kiss it." *Id.* at 879. The district court held that this

2   behavior was sufficient to articulate a claim under Title IX, based, in part, upon the

3   evidence of sexual stereotyping present. *Id.* at 880 (citing *Galdieri- Ambrosini v.*

4   *Nat. Realty & Dev.*, 136 F.3d 276, 289 (2nd Cir. 1998)). Both *Ray* and *Schroeder*, as

5   gender stereotype cases, do not support plaintiffs' bald and overly broad assertion

6   that "Courts have read Title IX as flatly protecting students from sexual orientation

7   discrimination in educational institutions." (Opposition at p. 8.) This Court should

8   reject Plaintiffs' attempt to interpret cases such as *Ray* and *Schroeder* as abrogating

9   the judicial consensus that Titles VII/IX do not recognize sexual orientation (as

10  opposed to gender stereotyping) as a protected class.

11  Pepperdine recognizes that gender stereotype discrimination is actionable.

12  (Motion to Dismiss at pp. 19-22.) *Ray* and *Schroeder* echo the facts of the leading

13  Ninth Circuit case in this field, *Nichols v. Azteca Restaurant Enterprises, Inc.*, 256

14  F.3d 864 (9th Cir. 2001). In *Nichols*, coworkers taunted the plaintiff for walking and

15  carrying a serving tray like a woman, and called him a "faggot" and a "female

16  whore." *Ray* and *Schroeder* are **not** exceptions to the well-established rule that

17  Titles VII/IX do not protect against sexual orientation discrimination. They are

18  merely illustrations of protected gender stereotyping claims, and do not purport to

19  contravene the overwhelming body of jurisprudence recognizing that Titles VII/IX

20  do not prohibit discrimination based on sexual orientation or preference.

21  **C.    The Judicial Trend Toward Extending Constitutional Protections**
22  **To Sexual Orientation Discrimination Has No Applicability to**
23  **Plaintiffs' Title IX Claims**

24  Plaintiffs admit, as they must, that *United States v. Windsor*, 133 S. Ct. 2675

25  (2013); *Smith Kline Beecham Corp. v. Abbott Labs*, 740 F.3d 471 (9th Cir 2014); and

26  *Latta v. Otter*, 771 F.3d 456 (9th Cir. 2014) "do not directly concern Title IX."

27  (Opposition at p. 2.) Nevertheless, plaintiffs sweepingly suggest that "[t]hese cases

28  reflect a jurisprudential sea change in the recognition of legal protections of gay

ANDERSON, McPHARLIN & CONNERS LLP
LAWYERS
707 WILSHIRE BOULEVARD, SUITE 4000
LOS ANGELES, CALIFORNIA 90017-3623
TEL (213) 688-0080 • FAX (213) 622-7594

1332305.1 05764-048

ANDERSON, MCPHARLIN & CONNERS LLP
LAWYERS
707 WILSHIRE BOULEVARD, SUITE 4000
LOS ANGELES, CALIFORNIA 90017-3623
TEL (213) 688-0080 • FAX (213) 622-7594

1  people, and their behavior." (Opposition at p. 10.)  For several reasons, plaintiffs'

2  grandiloquent characterization of constitutional trends does nothing to salvage their

3  Title IX claims in this action.

4  First, *Windsor* struck down the Defense of Marriage Act ("DOMA") because

5  it excluded a same-sex partner from the definition of "spouse" as that term is used in

6  federal statutes.  The Supreme Court found DOMA to be unconstitutional based

7  upon states' roles in establishing domestic relations law (*id.* at 2691) and uniformity

8  of marriage rights between states.  *Id.* at 2692.  *Windsor* was premised upon rights

9  conferred under the Fifth Amendment, a constitutional issue not present in the

10  instant case.

11  Moreover, the *Windsor* Court carefully limited its opinion, noting that "[t]his

12  opinion and its holding are confined to those lawful marriages."  *Id.* at 2696.

13  *Windsor* does not apply to rescue plaintiffs' Title IX claims, because the instant case

14  does not involve the issues of federal and state conflicts over traditionally state-

15  governed issues such as marriage and family.

16  Finally, the case at bar does not implicate the Fifth Amendment as did

17  *Windsor* but, rather, involves the interpretation of a statute enacted by Congress,

18  drafted with limited language specifically confining the statute's purview to, *inter*

19  *alia*, gender.  Many courts have recognized that Congress' refusal to expand the

20  reach of Title VII is strong evidence of congressional intent in the face of consistent

21  judicial opinions refusing to interpret Title VII or Title IX to include sexual

22  orientation.  *See, e.g., Simonton v. Runyon*, 232 F.3d 33, 35-36 (2d Cir. 2000); *Kiley*

23  *v. ASCPA*, 296 Fed. Appx. 107, 109 (2d Cir. 2008); *Bibby v. Philadelphia Coca*

24  *Cola Bottling Co.* 260 F.3d 257, 260-61 (3rd Cir. 2001); *Prowel v. Wise Business*

25  *Forms*, 579 F.3d 285, 293 (3rd Cir. 2009).  This Court should not usurp Congress'

26  role by broadening Title IX's reach when Congress itself has specifically declined to

27  do so.

28  Plaintiffs also focus upon Judge Berzon's opinion in *Latta v. Otter*, 771 F.3d

8

1    456 (9th Cir. 2014).  (Opposition at pp. 3, 10.)  In doing so, they conveniently ignore

2    the fact that the majority opinion did ***not*** hold that same-sex marriage bans were

3    unconstitutional because they classified couples based on gender.  Rather, the Ninth

4    Circuit held that "[l]aws that treat people differently based on *sexual orientation* are

5    unconstitutional…." *Id.* at 476.  Because the Ninth Circuit did not hold that gender

6    and sexual orientation classifications are co-extensive, *Latta* does not support an

7    interpretation of Title IX as prohibiting sexual orientation discrimination.  Judge

8    Berzon concurred to express his view that the same-sex marriage bans at issue were

9    unconstitutional because they classified on the basis of gender.  Because the

10   majority opinion did not base its ruling on gender, but, rather, sexual orientation,

11   *Latta* does not mandate a holding in the case at bar that Title IX's reach extends to

12   both gender and sexual orientation.  They are different claims, and receive different

13   judicial treatment as a result.

14       Nor does the Ninth Circuit's decision in *Smith Kline Beecham Corp. v. Abbott*

15   *Labs*, 740 F.3d 471 (9th Cir. 2014) mandate an expansion of Title IX to include

16   sexual orientation claims.  Simply because the Ninth Circuit applied heightened

17   scrutiny in an equal protection claim involving the sexual orientation of a juror does

18   not mean that this Court can ignore the clear mandate of Congress limiting the ambit

19   of Title IX to claims involving sex discrimination.  If, as plaintiffs claim, there is a

20   "jurisprudential sea change in the recognition of legal protections of gay people"

21   (Opposition at p. 10), Congress is fully capable of amending Title IX to encompass

22   sexual orientation claims.  Simply because courts have recognized Constitutional

23   protections for gay people in different contexts does not mean that this Court can,

24   unilaterally, expand the reach of a carefully drafted statute to exceed the scope

25   clearly articulated by Congress.

26       Nor does the recent Supreme Court decision in *Obergefell v. Hodges*, 576

27   U.S. _____ (2015) mandate a contrary result.  In *Obergefell*, the Supreme Court

28   held that the due process and equal protection clauses of the Fourteenth Amendment

ANDERSON, MCPHARLIN & CONNERS LLP
LAWYERS
707 WILSHIRE BOULEVARD, SUITE 4000
LOS ANGELES, CALIFORNIA 90017-3623
TEL (213) 688-0080 • FAX (213) 622-7594

ANDERSON, McPHARLIN & CONNERS LLP

LAWYERS

707 WILSHIRE BOULEVARD, SUITE 4000
LOS ANGELES, CALIFORNIA 90017-3623
TEL (213) 688-0080 • FAX (213) 622-7594

1  protected the fundamental right to marry, and couples of the same sex may not be

2  deprived of that right and that liberty.  Slip Op. at p. 22.  Central to the Supreme

3  Court's decision was the recognition that "the right to marry is fundamental under

4  the Due Process Clause."  *Id.* at 11.  The Supreme Court further recognized that the

5  Equal Protection Clause could also protect against "unjustified inequality within our

6  most fundamental institutions that once passed unnoticed and unchallenged."  *Id.* at

7  20.

8       In contrast, the instant case involves no fundamental rights such as marriage.

9  Nor does it implicate constitutional claims arising out of the Fourteenth

10  Amendment's Due Process or Equal Protection clauses.  Although there may be a

11  broadening of  Constitutional protections for gay people, Congress has not yet seen

12  fit to amend Title IX to reflect this trend.  Nor does this Court have the power to

13  broaden the statute's scope by judicial fiat.  As Chief Justice Roberts made clear in

14  his dissent in *Obergefell*, "this Court is not a legislature.  Whether same-sex

15  marriage is a good idea should be of no concern to us.  Under the Constitution,

16  judges have power to say what the law **is**, not what it should be." (emphasis added)

17  Slip Op. at 2 (Roberts, C.J. dissenting).  Chief Justice Roberts emphasized that "[i]t

18  can be tempting for judges to confuse our own preferences with the requirements of

19  the law."  Accordingly, "[c]ourts are not concerned with the wisdom or policy of

20  legislation."  Slip Op. at 3 (quoting *Lochner v. New York*, 198 U.S. 45, 76 (1905)

21  (Harlan, J. dissenting)).  Thus, although this Court may believe that legislative

22  expansion of Title IX might constitute good policy, this Court must exercise judicial

23  restraint and resist the urge to substitute its own preferences for the requirements of

24  the statute and its universal judicial interpretation.

25       In contrast to the laws at issue in *Windsor*, *Latta*, and *Obergefell*, Title IX

26  does not conflict with any law that offers protection for sexual orientation

27  discrimination; it is simply silent on the issue.  As noted in Pepperdine's Motion to

28  Dismiss, Title IX does not prohibit a state from offering protection for a gay person

1332305.1 05764-048

10

ANDERSON, McPHARLIN & CONNERS LLP
LAWYERS
707 WILSHIRE BOULEVARD, SUITE 4000
LOS ANGELES, CALIFORNIA 90017-3623
TEL (213) 688-0080 • FAX (213) 622-7594

1  who believes he or she has been treated differently because of his or her sexual

2  orientation.  The plaintiffs herein have availed themselves the protection of those

3  laws in California (e.g., the Unruh Civil Rights Act). As such, this court should

4  leave plaintiffs to their state law remedies and resist the urge to conflate

5  Constitutional jurisprudence with Title VII/IX jurisprudence.

6       **D.**     **<u>The Plaintiffs Have Failed To Allege Facts To Support Their Claim</u>**

7                **<u>That They Were Harassed Due To Their Failure To Conform To</u>**

8                **<u>Gender Stereotypes</u>**

9       Plaintiffs concede that they have alleged no facts to support a claim that they

10  were stereotyped based upon typical notions about how men and women should

11  appear and behave.  (Opposition at 12.)  Nevertheless, to salvage their gender

12  stereotyping claim, plaintiffs ignore well-settled jurisprudence establishing the

13  contours of gender stereotyping cases, discussed in Pepperdine's Motion to Dismiss

14  at 19-22.

15       *Price Waterhouse v. Hopkins*, 109 S. Ct. 1775 (1989) and its progeny clearly

16  recognize that gender stereotyping discrimination is based upon "stereotypical

17  notions about how men and women should appear and behave."  *Howell v. North*

18  *Central College*, 320 F. Supp. 2d 717, 722 (N.D. Ill. 2004).  Similarly, in *Nichols v.*

19  *Azteca Restaurant Enterprises, Inc.*, 256 F.3d 864 (9th Cir. 2001), the Ninth Circuit

20  found that gender stereotype harassment was present because the plaintiff failed to

21  conform to a male stereotype based upon a perception that he was effeminate.  *Id.* at

22  875.

23       The TAC is completely devoid of **any** allegations that amount to anything

24  more than merely conclusory allegations that plaintiffs were harassed due to their

25  failure to conform to stereotypical views of females.  There is not one fact in the

26  TAC that identifies any type of characteristic, dress, or behavior that could support a

27  gender stereotype claim.  This omission, viewed in light of the fact that the entire

28  action is premised upon plaintiffs' allegations that they were harassed or

ANDERSON, McPHARLIN & CONNERS LLP
LAWYERS
707 WILSHIRE BOULEVARD, SUITE 4000
LOS ANGELES, CALIFORNIA 90017-3623
TEL (213) 688-0080 • FAX (213) 622-7594

1  discriminated against because of their dating relationship, compels a ruling that this

2  is not a gender stereotype case protected by Title IX.

3      Plaintiffs' simplistic argument that Pepperdine "made stereotypical

4  assumptions about Plaintiffs' sexuality and relationships based on their status as

5  female basketball players" (Opposition at pp. 12-13) is ludicrous.  If, as plaintiffs

6  suggest, they were subject to gender stereotyping discrimination based on their

7  status as female basketball players, the **entire team** would perforce have been

8  discriminated against, presumably based upon the "stereotype" that female

9  basketball players are gay.[3]  There is nothing to distinguish plaintiffs from the rest

10 of the women's basketball team.  Plaintiffs have not alleged that they were the

11 victims of any stereotypical assumptions that fall within the rubric of gender

12 stereotyping.   Moreover, Coach Ryan's alleged disparagement of "lesbians" and

13 their relationships (Opposition at p. 13) is of no moment for analyzing a gender

14 stereotyping claim.  Were these allegations true (which they are not), they would not

15 amount to actionable gender stereotyping under Title IX because they do not

16 implicate stereotypical notions of how men and women should appear and behave.

17      The authorities relied upon by plaintiffs to support a gender stereotype claim

18 are unpersuasive.  For example, in *Snelling v. Fall Mountain Regional School Dist.*,

19 2001 WL 276975 (D. N. H. March 21, 2001), one plaintiff alleged that he had been

20 the victim of name calling, with words such as "fag" and "homo" said harshly and

21 with hatred.  *Id.* at 1.  The Snelling plaintiffs argued that the harassment they

22 experienced "arose from the perpetrators' sex-based stereotypes of masculinity,

23 which is actionable under Title IX.  *Id.* at 3 (quoting *Higgins v. New Balance

24 Athletic Shoe, Inc.*, 194 F.3d 252, 259 (1st Cir. 1999) ("a man can ground a claim on

25

26 [3] There is no allegation that the entire team was subject to discrimination.  Since
27 such an allegation would strengthen plaintiffs' position in this case, surely that fact
   would have been alleged if it were true.

28

ANDERSON, MCPHARLIN & CONNERS LLP
LAWYERS
707 WILSHIRE BOULEVARD, SUITE 4000
LOS ANGELES, CALIFORNIA 90017-3623
TEL (213) 688-0080 • FAX (213) 622-7594

1  evidence that other men discriminated against him because he did not meet

2  stereotyped expectations of masculinity")).  The TAC, in contrast, contains **no**

3  **allegations** that Plaintiffs were discriminated against based upon sex-based

4  stereotypes of femininity.  Their efforts to cram a square peg into a round hole

5  notwithstanding, plaintiffs have not articulated a claim for gender stereotype

6  discrimination.

7      Nor does *Montgomery v. Independent School Dist.*, 109 F. Supp. 2d 1081 (D.

8  Minn. 2000) support plaintiffs' gender stereotype claim.  In *Montgomery*, the

9  District Court squarely held that "Title IX prohibits only discrimination based on

10 sex and does not extend to any other form of invidious discrimination.  For these

11 reasons, the Court concludes that, **to the extent plaintiff asserts Title IX claims**

12 **based on discrimination due to a sexual orientation or perceived sexual**

13 **orientation, these claims are not actionable and must be dismissed**."  *Id.* at 1090

14 (emphasis added).  The *Montgomery* court, however, permitted the Title IX claim to

15 proceed specifically *because* plaintiff "did not meet … stereotyped expectations of

16 masculinity. … [P]laintiff specifically alleges that some of the students called him

17 'Jessica,' a girl's name, indicating a belief that he exhibited feminine

18 characteristics."  *Id.* at 1090.  Because the plaintiff's claims were "based on

19 feminine personality traits that he exhibited and the perception that he did not

20 engage in behaviors befitting a boy," the plaintiff was held to articulate a gender

21 stereotyping harassment claim.  These facts are absent from the case at bar.

22     Conclusory allegations of gender stereotyping aside, the TAC contains **no**

23 **specific facts** which would bring this case within the purview of *Price Waterhouse*

24 and its progeny.  This case is about sexual orientation, not gender stereotyping.

25 Accordingly, to the extent plaintiffs' Title IX claims are based upon their contention

26 that they were discriminated against because of gender stereotyping, the claims fail

27 to state a claim upon which relief can be granted, and the Third, Fourth and Fifth

28 Causes of Action must be dismissed.

E.     **The Fifth Cause Of Action Must Be Dismissed Because Plaintiffs Have Failed To Allege Any Actionable Retaliation Under Title IX**

Plaintiffs devote a mere paragraph in their Opposition to support their claim that they have sufficiently alleged actionable retaliation under Title IX.  For several reasons, plaintiffs' arguments are unpersuasive.

First, plaintiffs have not engaged in conduct protected by Title IX.  As argued in Pepperdine's Motion to Dismiss, Title IX does not encompass claims arising out of sexual orientation.  It must follow, then, that a retaliation claim arising out of underlying alleged sexual orientation discrimination is not actionable.  *See Cunningham v. City of Arvada*, 2012 WL 3590799 (D. Colo. June 12, 2012); *Essary v. Federal Express Corp.*, 161 Fed. Appx. 782, 786 (10th Cir. 2006).

Next, a retaliation claim is one that has at its core the protection of the person who complains of some type of unlawful discrimination.  In the instant case, plaintiffs have failed to allege any facts to suggest that they were retaliated against *because* they complained of sex discrimination.  Plaintiffs point to ¶ 28 of the TAC, but that merely alleges that Layana complained that Adi was attempting to ascertain personal information from her regarding her private life.  Coach Ryan assured Layana that other teammates had also complained about Adi not focusing on academics, and he would soon be having a coach monitor the meetings with Adi.  These facts are a far cry from facts supportive of a claim of retaliation.  At most, plaintiffs complained that they were subject to inquiries from Pepperdine staff.  These mere inquiries, however, coupled with plaintiffs' own admissions that they kept the nature of their relationship a secret, lead to the logical conclusion that plaintiffs *never* complained about sexual discrimination.  Without such a complaint, there could be no subsequent retaliation based on unlawful discrimination.

Nor are there any meaningful allegations of actual retaliation.  For example, plaintiffs make much of Pepperdine's handling of men's basketball player A.J. Lapray's NCAA appeal (TAC, ¶ 36).  In doing so, they claim that, despite Layana's

ANDERSON, MCPHARLIN & CONNERS LLP
LAWYERS
707 WILSHIRE BOULEVARD, SUITE 4000
LOS ANGELES, CALIFORNIA 90017-3623
TEL (213) 688-0080 • FAX (213) 622-7594

1   arriving at Pepperdine six months before Lapray's arrival at Pepperdine, his appeal

2   was filed and approved first.  Of course, plaintiffs omit any background facts which

3   would explain why (or if) two different students' appeals were handled in a different

4   manner, or facts to support any claim that any purported delay in Layana's appeal

5   was based upon a retaliatory purpose.  Similarly, although plaintiffs cite various

6   allegedly retaliatory acts (Opposition at p. 6), the TAC contains no allegations that

7   these acts were actually taken in retaliation against plaintiffs for complaining of sex

8   discrimination.  Because plaintiffs have failed to allege acts that were actionable

9   retaliation, the Fifth Cause of Action must be dismissed.

10   **F.**   **The Third, Fourth and Fifth Causes of Action For Violation Of**

11        **Title IX Should Be Dismissed As They Are Uncertain And Not**

12        **Legally Cognizable**

13        Plaintiffs do not bother to cite any authority to support their unwarranted

14   splitting of their Title IX claims into three separate causes of action.  As discussed in

15   Pepperdine's Motion to Dismiss, *Davis v. Monroe County Board of Education*, 526

16   U.S. 629 (1999), established the elements of a private right of action under Title IX.

17   *Davis*, however, did not distinguish between various types of alleged sexual

18   harassment.  There is, therefore, no basis for plaintiffs to attempt to split their Title

19   IX claims into three causes of action when each of these causes of action merely

20   reiterates different theories of harassment.  While Pepperdine contends this issue is

21   moot since there is no basis for **any** claim under Title IX, because harassment and

22   discrimination are coextensive for purposes of Title IX (*Mansourian v. Regents*, 602

23   F.3d 957, 967 (9th Cir. 2010); *Reese v. Jefferson School Dist.* 208 F.3d 736, 739 (9th

24   Cir. 2000)), Plaintiffs' claims should be pleaded in one cause of action.

25   **G.**   **Plaintiffs' Claim For Prejudgment Interest Should be Dismissed**

26        Again, plaintiffs have cited *no authority* to support their unwarranted claim

27   for prejudgment interest.  Rather, plaintiffs invite this Court to defer ruling on the

28   question of prejudgment interest until later in the case.  As argued extensively in

ANDERSON, McPHARLIN & CONNERS LLP
LAWYERS
707 WILSHIRE BOULEVARD, SUITE 4000
LOS ANGELES, CALIFORNIA 90017-3623
TEL (213) 688-0080 • FAX (213) 622-7594

1 Pepperdine's Motion to Dismiss the FAC, there is no legal basis for plaintiffs'

2 prejudgment interest claim, and it should be dismissed.

3 **III.   <u>CONCLUSION</u>**

4       Plaintiffs have cited no applicable or persuasive authority to oppose the

5 Motion to Dismiss.  This Court is bound by the plethora of authority holding that

6 Title VII/IX claims cannot be based upon sexual orientation, irrespective of judicial

7 trends recognizing constitutional rights of same sex couples.  Plaintiffs' gender

8 stereotype claims and retaliation claims are similarly without merit.  Accordingly,

9 for the reasons stated herein and in the Motion to Dismiss, Pepperdine respectfully

10 requests that the Third, Fourth and Fifth Causes of Action of the TAC and Prayer for

11 prejudgment interest be dismissed.

12

13 DATED:  July 6, 2015              ANDERSON, McPHARLIN & CONNERS LLP

14

15                       /s/ Paula Tripp Victor

16             By: _____

17                Paula Tripp Victor
               Peter B. Rustin

18          Attorneys for Defendant
        PEPPERDINE UNIVERSITY

19

20

21

22

23

24

25

26

27

28

ANDERSON, McPHARLIN & CONNERS LLP
LAWYERS
707 WILSHIRE BOULEVARD, SUITE 4000
LOS ANGELES, CALIFORNIA 90017-3623
TEL (213) 688-0080 • FAX (213) 622-7594

1332305.1 05764-048

16